No. 102,070

STATE OF KANSAS, *Appellee*, v. STERLING RAY HALL, III, *Appellant*.

(257 P.3d 272)

Opinion filed August 12, 2011.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Natalie A. Chalmers*, assistant district attorney, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

CAPLINGER, J.: In this direct appeal, Sterling Ray Hall, III, seeks reversal of his convictions of first-degree murder and criminal possession of a firearm. Hall asserts the prosecutor committed misconduct during closing argument by misstating the evidence and the law regarding the element of premeditation; by injecting his personal belief into closing argument; and by inflaming the passions of the jury by appealing to the jurors' sense of responsibility. Further, Hall claims the district court erred by failing to provide the appropriate lesser included offense instruction for second-degree murder, PIK Crim. 3d 56.03. Hall also challenges the sufficiency of the evidence of his first-degree murder conviction, arguing the evidence of premeditation was insufficient to sustain the conviction, and he contends the cumulative effect of several alleged trial errors deprived him of a fair trial. Finally, he alleges his constitutional rights were violated by sentencing errors.

While we find that the prosecutor misstated the law as it related to the facts of this case regarding the defendant's ability to premeditate the killing, we conclude this error did not prejudice the defendant's right to a fair trial under the circumstances presented. We further hold the district court did not clearly err in failing to give the instruction for second-degree murder as a lesser included offense, PIK Crim. 3d 56.03, and the evidence of premeditation was sufficient to support Hall's first-degree murder conviction. Finally, we find no cumulative trial or sentencing errors. Therefore, we affirm Hall's convictions and sentences.

## FACTUAL AND PROCEDURAL BACKGROUND

We have briefly summarized below the facts developed at trial. Additional facts will be discussed as relevant to the issues raised.

In the early evening hours of May 15, 2008, Leona Pahmahmie agreed to pick up her friend, Brenda Rowe, at an apartment complex and drive her to the Regency Inn in Topeka. When Pahmahmie, accompanied by her cousins, Keith Buskirk and Karie Wahweotten, arrived at Rowe's apartment, Rowe came out with Hall, whom Rowe identified only as her "bodyguard." Rowe and Hall got in Pahmahmie's car, and Pahmahmie drove to the Regency Inn and parked in the motel's parking lot. While Rowe went inside to

register for a room, Pahmahmie and the vehicle's three passengers waited in the vehicle. Pahmahmie remained in the driver's seat, Hall sat behind her in the back seat, Wahweotten sat in the front passenger seat, and Buskirk sat behind Wahweotten in the back seat.

Inside the motel lobby, Rowe encountered difficulties with the credit cards offered as payment for a room. Consequently, she remained inside the motel lobby for approximately 15 to 20 minutes. Meanwhile, from their vantage points in the vehicle, Pahmahmie and Buskirk could see a group of people sitting in an open corridor on the ground level several doors down from the main office. The individuals in that group included the victim, Pamela McMaster, her fiancé, Michael Scroggin, and their friend, Kenneth Blake. The three were sitting outside McMaster's motel room drinking beer and barbecuing.

After Rowe had been gone approximately 15 minutes, Hall announced he was "ready to go do something" or "ready to go." He got out of Pahmahmie's car and stood for a moment or two near the front of the car before pulling the hood of his sweatshirt over his head. Hall then walked down the corridor where McMaster and her friends were seated, stopped directly behind McMaster, and shot her four times in the back. McMaster immediately folded over into Scroggin's lap.

Hall then ran back to the vehicle carrying a gun, jumped in, and directed Pahmahmie to "just fucking go." Simultaneously, Rowe returned to the car from the motel office.

Pahmahmie dropped off Hall and Rowe at a nearby restaurant. After Hall and Rowe ate, they went to a motel and later to Jill Waterman's residence. There, Hall showered and changed clothes, leaving a bag of personal items in a storage room.

Two days later, police arrested Hall, Rowe, and Waterman, and then with Waterman's consent, searched Waterman's home. There, police discovered a bag containing a loaded .22 caliber handgun and some of the clothing Hall was wearing at the time of the murder. The State charged Hall with first-degree murder and criminal possession of a firearm, and he was convicted by the jury as charged.

## ANALYSIS

In this appeal of his convictions and sentences, Hall alleges multiple trial errors and two sentencing errors. We address each of these alleged errors in turn.

### Prosecutorial Misconduct

Hall first asserts the prosecutor committed misconduct in closing argument by: (1) misstating a key witness' testimony relevant to premeditation; (2) misstating the law regarding the element of premeditation as it applied to this case; (3) injecting his personal belief into closing argument; and (4) inflaming the passions of the jury by commenting on the jurors' responsibility.

Hall failed to object to any of the instances of prosecutorial misconduct of which he now complains. But because comments made in closing argument are not evidence, Hall was not required to contemporaneously object to preserve his claims of prosecutorial misconduct. See *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009).

We apply a two-step framework in analyzing prosecutorial misconduct claims. First, we determine whether the prosecutor's comments were outside the wide latitude allowed prosecutors in discussing the evidence. If so, then we next consider whether those comments constituted plain error; that is, whether the comments prejudiced the jury against the defendant and denied the defendant a fair trial. If we find plain error, we must reverse. See *State v. Richmond*, 289 Kan. 419, 439, 212 P.3d 165 (2009); *State v. Tosh*, 278 Kan. 83, 85, 91 P.3d 1204 (2004).

A. *Did the prosecutor make improper comments during closing argument?*

1. *Misstatement of the evidence*

Hall contends that in closing argument the prosecutor misstated Pahmahmie's testimony regarding the statement Hall made as he waited in the vehicle immediately before the shooting.

During the State's case-in-chief, Pahmahmie was asked if she recalled Hall saying something outside the vehicle. When she responded negatively, the prosecutor presented her with her state-

ment to police, which was admitted into evidence without objection as State's Exhibit 97. In that statement, Pahmahmie indicated that just before Hall got out of the car, he said, "I don't know, but I'm ready to do something." After Pahmahmie was directed to read the relevant portion of her statement, she indicated her recollection had been refreshed and testified as follows:

> "A.   Before he got out he said he was ready to go.
> "Q.   Okay. That's before he got out of the car?
> "A.   Uh-huh.
> "Q.   Okay. And he said what? I apologize.
> "A.   That he was ready to go do something. He was ready.
> "Q.   Ready to go and do something?
> "A.   Not ready to go and do—he just said he was ready to go.
> "Q.   Okay. Was he—could you easily understand what he was saying?
> "A.   I mean, yeah, he said it just quietly but, yeah.
> "Q.   Okay.
> "A.   I just took it as he was, you know, ready to go like I was ready to go.
> "Q.   You were ready to go too, right?
> "A.   Yeah."

In his initial closing argument, the prosecutor twice referred to Pahmahmie's testimony regarding Hall's statement:

> "What do you have from the individuals in the car? They've never talked to Mr. Scroggin, they've never talked to Mr. Blake. But what do they tell you? They tell you the individual that they identified as Mr. Hall got out of that vehicle, that Ms. Leona, who was closest to where he got out, *said he said something to the effect, I've got to go do something.* He deliberately got out of the car, said what he said. He then took several steps, stood by a wall looking at the car, takes a moment. He's thinking about what he's going to do next. He pulls a hood up, turns and walks down the hallway. . . .
>
>    . . . .
> "Now, the question then becomes premeditation. You heard the instruction. It means to have thought the matter over beforehand. Well, let's look when that happened. . . . [Premeditation] simply requires him to form the thought prior to committing the act.
> "Well, he deliberating [*sic*] gets out of the vehicle, he tells the individuals *I've got to do something.* He takes several steps. During that time period to the wall, he certainly could have turned around and got right back in the vehicle. He gets to the wall, and what does he do? He pulls up a hood." (Emphasis added.)

On appeal, Hall contends the prosecutor committed misconduct when he twice told the jury that Hall said "I've got to go do some-

thing." Hall contends "there was no such testimony at trial" and therefore the prosecutor was improperly stating facts not in evidence. Hall reasons that this misstatement was significant because the key issue at trial was premeditation, and the statement, "I've got to go do something," indicated Hall intended to commit an act, *i.e.*, he premeditated the killing, while the statement, "I'm ready to go," merely indicated Hall was fidgety and tired of waiting in the car.

This court has repeatedly held that in closing argument, a prosecutor may draw reasonable inferences from the evidence but may not comment upon facts outside the evidence. See *State v. Murray*, 285 Kan. 503, 512, 174 P.3d 407 (2008). "A prosecutor 'is given wide latitude in language and in manner [of] presentation of closing argument as long as the argument is consistent with the evidence.' [Citation omitted.]" *State v. Warledo*, 286 Kan. 927, 947, 190 P.3d 937 (2008) (quoting *State v. Scott*, 271 Kan. 103, 114, 21 P.3d 516, *cert. denied* 534 U.S. 1047 [2001]). Further, when a prosecutor argues facts not in evidence, the first prong of the prosecutorial misconduct test is met, and we must consider whether the misstatement of fact constitutes plain error. *State v. Ly*, 277 Kan. 386, Syl. ¶ 4, 85 P.3d 1200, *cert. denied* 541 U.S. 1090 (2004).

We do not agree with Hall's characterization of the prosecutor's summary of Pahmahmie's testimony as being outside the evidence. Contrary to Hall's suggestion, Pahmahmie did testify that Hall said he was "ready to go do something." And significantly, although neither party mentions it, this testimony came after Pahmahmie's recollection was refreshed with her statement to police in which she claimed that before getting out of the vehicle, Hall said, " 'I don't know but I'm ready to do something.' " Pahmahmie's statement to police was admitted into evidence and available to the jury, and it was consistent with her testimony given immediately after seeing her prior statement at trial.

And while Pahmahmie did attempt to correct her statement to police and the statement she had just made at trial by saying that Hall said only that "he was ready to go," that clarification does not change the fact that Pahmahmie's statement to police and her statement at trial were both in evidence and thus supported the

prosecutor's comments in closing argument. We find no misconduct with respect to this issue.

### 2. *Misstatement of the law*

Pointing to the following excerpts from the prosecutor's closing arguments, Hall argues the prosecutor committed further misconduct by twice misstating the law regarding the element of premeditation:

"Premeditation, don't get confused about time either. As the instruction tells you, there's no element of time necessary. *It can be seconds, minutes, days.* There's no requirement of a period of time.

. . . .

". . . It isn't about—it isn't a matter of fact of how many things we've given you. It's the quantity—it's the quality of what we've given you. It's the quality of what the witnesses told you about what occurred before he pulled the trigger the first time.

*"You can even form premeditation after the pull of the first trigger, because remember, he pulls four times.* He says there's no evidence of the fact that the two on the bottom occurred before. Well, nobody made that statement. But what you did hear is that he fired and kept moving forward." (Emphasis added.)

A defendant is denied a fair trial when a prosecutor misstates the law and the facts are such that the jury could have been confused or misled by the statement. *State v. Bunyard,* 281 Kan. 392, 404, 133 P.3d 14 (2006) (citing *State v. Henry,* 273 Kan. 608, 619, 44 P.3d 466 [2002]).

Hall argues that with the italicized comments above, the prosecutor effectively advised the jury that premeditation can occur instantaneously—a premise repeatedly disapproved by this court. See, *e.g., State v. Cosby,* 285 Kan. 230, 248, 169 P.3d 1128 (2007) ("We have consistently found reversible misconduct when a prosecutor states or implies that premeditation can be instantaneous."); *State v. Morton,* 277 Kan. 575, 585, 86 P.3d 535 (2004) (*Morton I*) (reversible error for prosecutor to imply premeditation can be instantaneous); *State v. Pabst,* 273 Kan. 658, 662, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002) (*Pabst II*) ("A discussion of PIK Crim. 3d 56.04[b] in closing argument should avoid any temptation to use a synonym to convey the suggestion of 'an instant' without using the actual phrase.").

We have described premeditation as a " 'state of mind' " that relates "to a person's reasons and motives for acting as he or she did." *State v. Doyle*, 272 Kan. 1157, 1162, 38 P.3d 650 (2002) (quoting *State v. Cravatt*, 267 Kan. 314, 328, 979 P.2d 679 [1999]). PIK Crim. 3d 56.04(b) defines premeditation as "to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life."

Hall contends that by advising the jury that premeditation could be formed in "seconds, minutes, days," the prosecutor implied that premeditation could be formed instantaneously. We disagree. In fact, the prosecutor specifically preceded his reference to "seconds, minutes, days" with the statement that "there's no element of time necessary." This language is consistent with PIK Crim. 3d 56.04, the pattern instruction given to the jury in this case, which provides that "there is no specific time period required for premeditation." Thus, we conclude this particular statement did not misstate the law.

We are more concerned, however, with the prosecutor's statement that Hall could have "form[ed] premeditation after the pull of the first trigger, because remember, he pulls four times." Hall argues this was an improper statement of the law and mischaracterized the evidence in this case because there was no evidence that after pulling the trigger the first time, Hall had an opportunity to "have thought the matter over beforehand" or "formed the intent to kill before the act."

Relying on *State v. Saleem*, 267 Kan. 100, 977 P.2d 921 (1999), the State contends the prosecutor did not misstate the law because it was "theoretically possible for Hall to have instantaneously shot the victim on the first shot, but have fired the other shots with the plan to kill the victim." The State concludes simply that "[s]tating that this was theoretically possible was not a misstatement of the law."

In *Saleem*, this court rejected the defendant's claim that the evidence of premeditation was insufficient to support his first-de-

gree murder conviction where the defendant instigated an altercation with the victim, fell to the ground, and then "had sufficient time to consider his actions as he arose from the ground and drew his weapon and fired not one but four shots." 267 Kan. at 106.

*Saleem* is distinguishable for two key reasons. First, the issue before the court in that case was whether the evidence was sufficient to support the element of premeditation—not whether the prosecutor committed misconduct by misstating the facts or evidence regarding premeditation, the question we currently face. Further, *Saleem* does not stand for the proposition that when shots are fired in rapid succession, a defendant may form the requisite premeditation after the first shot and sometime between the next three shots, as the prosecutor suggested here. Rather, the court in *Saleem* clearly conditioned its finding on the specific circumstances before it—*i.e.*, the defendant initiated an altercation and then fell down and got up before firing four successive shots. 267 Kan. at 106.

Here, on the other hand, there was no evidence of any interaction or altercation between Hall and the victim before the shooting. Rather, the evidence showed that the four shots that felled the victim were fired in rapid succession. The victim's fiancé Michael Scroggin, who was seated next to the victim, testified:

"Q:  What happened next?

"A:  As people come walking through the corridor, and then they walk out in the parking lot and go to their houses or whatever they're doing, we kind of noticed, and then we go back, like I say, to the conversation. I noticed a man come through the opening of the corridor, and he had on a hooded sweatshirt. And for a split second, I thought it was kind of weird because it was really nice that day, but I didn't think nothing about it. I turned back around and went right back to the conversation.

"Q:  What happened next?

"A:  The next thing I know, Pamela had been shot in the back. As quick as I realized that, that person was already gone, and then she folded up over into my lap. I actually didn't even realize she was shot until after she folded up in my lap, then I could see the little round blood splotches in her back."

Similarly, Kenneth Blake, who sat directly across from the victim at the time of the shooting, testified, "He [Hall] kept on coming up, and came right up to the back of Pam and Mike, and reached

in this area of his person, and pulled out a gun, and shot Pam four times in the back."

The evidence showed that the shooter fired four shots in rapid succession, immediately killing McMaster. Therefore, when the prosecutor told the jury that Hall could have premeditated the murder after "the pull of the first trigger," he essentially suggested that premeditation could have been formed instantaneously—a premise repeatedly disapproved by this court. As such, we conclude that the prosecutor misstated the law with respect to the facts of this case.

We will leave for another day the State's assertion that it may be "theoretically possible" under the law to instantaneously and without premeditation fire an initial shot at a victim, but to then premeditate before firing additional shots. We are not faced with that question here, and the evidence in this case does not support the State's theoretical argument.

### 3. *Injecting personal belief into closing*

Next, Hall claims the prosecutor committed misconduct in his closing arguments by inappropriately injecting his personal belief as to Hall's guilt with the following statement:

> "*Like I told you in Voir Dire, that I would present all the evidence necessary to convict the defendant of first-degree murder. And I believe the evidence states for that fact that I've done that.* But what I told you I would not be able to do is present you with why. The witnesses who saw it couldn't tell you why." (Emphasis added.)

A lawyer is prohibited from stating "a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused." Kansas Rules of Professional Conduct 3.4(e) (2010 Kan. Ct. R. Annot. 552); *State v. Pabst*, 268 Kan. 501, 506, 996 P.2d 321 (2000) (*Pabst I*). The point of not allowing a prosecutor to comment on the credibility of a witness is that expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony, not commentary on the evidence of the case. 268 Kan. at 510.

Hall argues the prosecutor's comments here equate with the improper injection of personal beliefs found objectionable in *Pabst*

*I.* We disagree. While we recognized in *Pabst I* that a prosecutor may not express his or her personal belief regarding the defendant's guilt, the prosecutor here did not do so. Instead, he reminded the jurors that he had told them in voir dire that he would present the necessary evidence to convict the defendant, and he further informed them that he believed he had done his job. Accordingly, we do not find this statement to be improper.

### 4. *Inflaming the passions of the jury*

Pointing to the following statement in the prosecutor's closing arguments, Hall claims the prosecutor inflamed the passions of the jury by suggesting that the jury had a responsibility to find Hall guilty of first-degree premeditated murder:

"Ladies and gentlemen, the blood on that sidewalk that was spilled that day is long since gone. The memories of that day though of the witnesses that you heard from are not. Thank goodness they were here to tell you what happened. *And now it's your responsibility to go back, view that evidence, not forget what happened, but expose what happened, and tell this man exactly what he's guilty of: First-degree premeditated murder and criminal possession of a firearm.* Thank you." (Emphasis added.)

"Prosecutors are not allowed to make statements that inflame the passions or prejudices of the jury or distract the jury from its duty to make decisions based on the evidence and the controlling law." *State v. Baker,* 281 Kan. 997, 1016, 135 P.3d 1098 (2006); see *Tosh,* 278 Kan. at 90, 98; *Henry,* 273 Kan. at 641. We have held that a prosecutor must guard against appeals to jurors' sympathies or prejudices. *Cravatt,* 267 Kan. at 333.

More specifically, we have found a prosecutor's comments to be improper when the prosecutor asked the jury to send a message to the community or a message that promotes a "fear in the neighborhood." See *Cravatt,* 267 Kan. at 333-34. But see *State v. Nguyen,* 285 Kan. 418, 425, 172 P.3d 1165 (2007) (finding it permissible for prosecutor to ask for justice generally, as opposed to asking for justice for the victim).

In arguing the prosecutor's comment here was improper, Hall relies on *State v. Ruff,* 252 Kan. 625, 636, 847 P.2d 1258 (1993), where this court found the prosecutor's closing statement errone-

ously informed the jurors that they had a duty to send a message to the community. In *Ruff*, the prosecutor drew a strong objection from defense counsel when he commented to the jury, " '[D]o not allow this conduct to be tolerated in our county.' " 252 Kan. at 631. In response, the trial court directed the prosecutor to " 'wind it up,' " and the prosecutor then again asked the jury to " '[s]end that message' " by returning a guilty verdict. 252 Kan. at 631.

Noting that the district court approved the prosecutor's remark after defense counsel's objection, this court held in *Ruff* that the misconduct could have prejudiced the jurors and hindered them from considering only the evidence presented, thereby depriving the defendant of a fair trial. 252 Kan. at 636.

The prosecutor's statement at issue in this case is distinguishable from the comment at issue in *Ruff*. Here, the prosecutor did not ask the jury to send a message; rather, he reminded the jurors of their responsibility to review the evidence and asked them to return a guilty verdict based on that evidence. While the prosecutor did suggest to the jury that it "expose what happened," we do not find this statement comparable to the "send a message" language utilized in *Ruff*.

B. *Did the prosecutor's misconduct affect the outcome of the trial?*

Having found the prosecutor erred in suggesting Hall could have premeditated the murder after firing the first shot, we next determine whether this misstatement required reversal. Prior to our recent discussion in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), we applied the following three-part test:

" '(1) whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will on the prosecutor's part; and (3) whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors. None of these three factors is individually controlling. Before the third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 60-261 (inconsistent with substantial justice) and *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) (conclusion beyond reasonable doubt that the error had little, if any, likelihood of having changed the results of the trial), have been met.' " *State v. Richmond*, 289 Kan. 419, 440, 212 P.3d 165 (2009) (quoting *State v. Bryant*, 285 Kan. 970, Syl. ¶ 2, 179 P.3d 1122 [2008]).

However, in *Ward* we recognized that when, as here, the defendant argues that an error implicates the defendant's rights under the United States Constitution, the statutory harmless error analysis under K.S.A. 60-261 and the federal constitutional error test under *Chapman* are the same. See *State v. Ward*, 292 Kan. at 562 (leaving open the question of what standard applies when errors are raised that do not implicate the federal Constitution). Specifically, we have modified the third factor of the second prong in our prosecutorial misconduct analysis to consider "whether the error affected substantial rights, meaning whether the error affected the outcome of the trial." *Ward*, 292 Kan. 541, Syl. ¶ 6.

We further specified in *Ward*, that the State, as the party benefitting from an error of constitutional magnitude, must bear the burden of demonstrating "beyond a reasonable doubt that the error complained of . . . did not affect the outcome of the trial in light of the entire record." *Ward*, 292 Kan. 541, Syl. ¶ 6.

We find no evidence in the record suggesting the prosecutor's conduct in this case was gross and flagrant or exhibited ill will. However, the defendant urges us to find, as we did in *Morton I*, that the prosecutor's error affected the outcome of the trial, requiring reversal.

In *Morton I*, the prosecutor pantomimed the firing of a gun while advising the jury that " '[o]ne squeeze of the trigger is all it takes.' " 277 Kan. at 578. This court reasoned the prosecutor's statement improperly implied to the jury that it could find the defendant instantaneously premeditated the killing. See 277 Kan. at 583-85.

Hall fails to note, however, that the *Morton I* court felt "compelled" to reverse despite finding "plenty of evidence of premeditation" because the jury in that case had indicated in the verdict form that it could not agree unanimously on the premeditation theory, thus indicating an uncertainty on the part of the jury with respect to this theory. 277 Kan. at 585-86.

As in *Morton I*, here the State presented the jury with more than sufficient evidence of premeditation. Witnesses who waited in the car with Hall testified that before the shooting they saw Hall get out of the car, pause, and pull his hood over his head before walking

down the corridor toward the victim and her friends. They then heard gunshots, saw Hall run back toward the vehicle with a gun in his hand, and heard Hall tell the driver of the vehicle to "just fucking go." Further, police later found Hall's clothes, including a dark hooded sweatshirt, and a gun in a bag at Waterman's home, where Hall had been dropped off after the shooting.

However, in this case, unlike *Morton I*, we have no evidence indicating the jury experienced any difficulty in deliberating over the issue of premeditation. Nor, as discussed below, do we have any additional errors which, when considered with the prosecutor's misstatement, require reversal, or any evidence that the prosecutor's statements were deliberate. See, *e.g.*, *Cosby*, 285 Kan. at 251-52 (cumulative effect of multiple instances of prosecutorial misconduct, coupled with prosecutor's statement implying premeditation was instantaneous, denied defendant a fair trial and required reversal); *State v. Holmes*, 272 Kan. 491, 499-500, 33 P.3d 856 (2001) (prosecutor, after correctly informing the judge as to the law regarding premeditation, deliberately misstated the law in closing argument, requiring reversal).

Further, the jury was properly instructed in this case on the law regarding premeditation and also was instructed that arguments of counsel were not evidence. See, *e.g.*, *State v. Hebert*, 277 Kan. 61, 85, 82 P.3d 470 (2004) (prosecutor's improper comment regarding premeditation was not reversible error when there was no evidence that prosecutor deliberately misstated the law, jury was given proper PIK instruction on premeditation, and jury was told that arguments of counsel were not evidence).

In light of the trial record as a whole, we conclude the State has demonstrated beyond a reasonable doubt that the prosecutor's misstatement did not affect the outcome of the trial and does not require reversal.

*Jury Instruction*

Next, Hall claims the district court committed reversible error when it failed to provide the lesser included offense instruction found in PIK Crim. 3d 68.09. Hall concedes he did not request this instruction.

Because Hall neither requested the instruction nor objected to the district court's failure to give the instruction, we review this issue under the clearly erroneous standard pursuant to K.S.A. 22-3414(3). "Instructions are clearly erroneous if there is a real possibility the jury would have rendered a different verdict had the instruction error not occurred." *State v. Marler*, 290 Kan. 119, 124, 223 P.3d 804 (2010) (citing *State v. Vasquez*, 287 Kan. 40, 51, 194 P.3d 563 [2008]).

"In reviewing jury instructions for error, we examine the instructions as a whole, rather than isolate any one instruction, and determine if the instructions properly and fairly state the law as applied to the facts of the case. [Citations omitted.]" *State v. Ellmaker*, 289 Kan. 1132, 1139-40, 221 P.3d 1105 (2009), *cert. denied* 130 S. Ct. 3410 (2010).

In this case, the district court instructed the jury on first-degree murder and second-degree murder, including the following standard instruction for second-degree murder: "If you do not agree that the defendant is guilty of murder in the first degree, you should then consider the lesser included offense of murder in the second degree." PIK Crim. 3d 56.03. The court did not instruct the jury according to PIK Crim. 3d 68.09, which provides:

"The offense of [first-degree murder] with which defendant is charged includes the lesser offense of [second-degree murder].

"You may find the defendant guilty of [first-degree murder] [second-degree murder] or not guilty.

"When there is a reasonable doubt as to which of two or more offenses defendant is guilty, (he) or (she) may be convicted of the lesser offense only.

"Your Presiding Juror should mark the appropriate verdict."

Hall contends that the "reasonable doubt" language of PIK Crim. 3d 68.09 upholds the defendant's right to be presumed innocent until proven guilty under K.S.A. 21-3109, and the failure to give the instruction violated his right to due process.

We previously addressed this issue in *State v. Massey*, 242 Kan. 252, 262, 747 P.2d 802 (1987), and *State v. Trujillo*, 225 Kan. 320, 323, 590 P.2d 1027 (1979). In each case, the defendant made the same argument Hall makes here: The trial court should have instructed the jury that if there is a reasonable doubt as to which of

two or more degrees of an offense he is guilty, he may be convicted of the lowest degree only. See *Massey*, 242 Kan. at 262; *Trujillo*, 225 Kan. at 323.

In both cases, we recognized that PIK Crim. 3d 68.09 derives from K.S.A. 21-3109, which reads:

"A defendant is presumed to be innocent until the contrary is proved. When there is a reasonable doubt as to his guilt, he must be acquitted. When there is a reasonable doubt as to which of two or more degrees of an offense he is guilty, he may be convicted of the lowest degree only."

And while in each case we concluded the trial court erred in failing to instruct the jury in accordance with PIK Crim. 3d 68.09, we applied the clearly erroneous standard required by K.S.A. 22-3414(3) to find no reversible error given the overwhelming evidence against the defendant in each case. *Massey*, 242 Kan. at 262; *Trujillo*, 225 Kan. at 324.

As previously discussed, the State presented substantial evidence of premeditation in this case. Applying a clearly erroneous standard and the rationale of *Massey* and *Trujillo* to the evidence presented here, we are firmly convinced that there is no real possibility the jury would have rendered a different verdict had the district court instructed the jury in accordance with PIK Crim. 3d 68.09. Therefore, while the district court did err in failing to instruct the jury on PIK Crim. 3d 68.09, that error was not reversible.

## Sufficiency of the Evidence

Hall challenges the sufficiency of the evidence of his first-degree murder conviction, arguing the State failed to prove premeditation beyond a reasonable doubt. Hall reasons the State failed to prove he formed the design or intent to kill before the shooting occurred because he did not know the victim, made no prior threats against her, and the shooting occurred very quickly after he exited the vehicle.

"When sufficiency of evidence is challenged in a criminal case, our standard of review is whether, after review of all the evidence, examined in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Prine*, 287 Kan. 713,

738, 200 P.3d 1 (2009) (citing *Vasquez*, 287 Kan. at 59; *State v. Morton*, 283 Kan. 464, 474, 153 P.3d 532 [2007] [*Morton II*]). In reviewing the sufficiency of the evidence, we do not reweigh the evidence or evaluate the credibility of witnesses. Rather, we leave that function to the jury. *State v. Doyle*, 272 Kan. 1157, 1162-63, 38 P.3d 650 (2002).

We have noted that direct evidence of premeditation is rare. Rather, the element of premeditation generally must be proven with circumstantial evidence. Such evidence, however, is "sufficient to establish even the gravest offenses, as in this case." *Doyle*, 272 Kan. at 1162; see *Cravatt*, 267 Kan. at 328.

In *Cravatt*, the defendant shot the victim point blank between the eyes, killing him instantly. The court noted: "Other than the defendant's alcohol consumption and statements made by him during the evening that persons, including the victim, were giving him a hard time at the party," there was little evidence of a motive for the killing. 267 Kan. at 316. Nevertheless, the court rejected the defendant's challenge to the sufficiency of the evidence of premeditation, noting the jury could infer premeditation from the established circumstances of the case provided the inference was a reasonable one. 267 Kan. at 329. Further, the court identified various circumstances from which a jury can infer premeditation:

"While premeditation to commit murder may not be inferred from the use of a deadly weapon alone, it may be inferred where other circumstances also exist. Circumstances which may give rise to the inference of premeditation include: (1) the nature of the weapon used; (2) the lack of provocation; (3) the defendant's conduct before and after the killing; (4) threats and declarations of the defendant before and during the occurrence; and (5) the dealing of lethal blows after the deceased was felled and rendered helpless." *Cravatt*, 267 Kan. 314, Syl. ¶ 4.

Thus, while evidence of a motive is lacking in this case, the jury nevertheless could infer premeditation based upon the presence of several of the circumstances enumerated in *Cravatt*. Specifically, Hall utilized a .22 caliber handgun, and there was no provocation or altercation between Hall and the victim. In fact, Hall did not even know the victim. Further, the defendant's conduct just prior to the killing, while not extensive, adds to the inference of premeditation.

Specifically, the victim and her friends were visible from Pah-mahmie's car where Hall waited for several minutes while Rowe was inside. Just before getting out of the car, Hall indicated he was "ready to go" or "ready to go do something." After getting out of the car, he paused for a moment, pulled up the hood of his sweat-shirt, and walked down the corridor where the victim was sitting with her friends. He then shot the victim four times in the back, quickly returned to the car with the gun in his possession, and ordered Pahmahmie to "just fucking go."

Considering the *Cravatt* factors and viewing all the evidence in the light most favorable to the State, we find the evidence more than sufficient to support an inference of premeditation and con-sequently to support Hall's conviction for first-degree murder.

### Cumulative Error

Finally, as his last challenge to his convictions, Hall argues that even if each of the alleged trial errors do not individually require reversal, the cumulative effect of those errors deprived him of a fair trial.

" 'Cumulative trial errors, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circum-stances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found under the cumulative effect rule if the evidence is overwhelming against a defendant.' [Citation omitted.]" *Nguyen*, 285 Kan. at 437 (quoting *State v. Anthony*, 282 Kan. 201, 216, 145 P.3d 1 [2006]).

We have found two trial errors. The prosecutor committed mis-conduct when he misstated the law on premeditation as it relates to the facts of this case. Additionally, the district court erred when it failed to instruct the jury in accordance with PIK Crim. 3d 68.09.

As we discussed, these errors considered individually do not ne-cessitate reversal. Further, substantial circumstantial evidence sup-ports the jury's verdict. Accordingly, we conclude the cumulative effect of the two trial errors did not substantially prejudice Hall or deprive him of a fair trial, and we affirm his convictions.

Next, we turn to Hall's allegations that the district court com-mitted two sentencing errors.

*Imposition of Consecutive Sentences*

In his appeal brief, Hall argued the district court erred in imposing consecutive sentences for his convictions of first-degree murder and criminal possession of a firearm because the court failed to impose consecutive sentences on the record at the sentencing hearing.

At oral argument, Hall's appellate counsel conceded that the sentencing transcript reflects the court's imposition of consecutive sentences on the record in Hall's presence in open court. Thus, no error occurred.

*Apprendi/Ivory Challenge*

Finally, Hall claims the use of his prior convictions in his criminal history to enhance his sentences without requiring the State to prove the convictions to a jury beyond a reasonable doubt is prohibited under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Hall recognizes that *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002), controls this issue, but he asks that we reconsider our position in this case.

We decline to do so. We revisited this issue in *State v. Fewell*, 286 Kan. 370, 395-96, 184 P.3d 903 (2008), and specifically reaffirmed *Ivory*. Thus, we affirm Hall's sentences.

Affirmed.

CAPLINGER, J., assigned.