NOT DESIGNATED FOR PUBLICATION

No. 112,592

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISMA REGINA ALLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Harvey District Court; JOE DICKINSON, judge. Opinion filed October 30, 2015. Affirmed.

*David J. Stucky*, of Adrian & Pankratz, P.A., of Newton, for appellant.

*Julianne N. Burton*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and ARNOLD-BURGER, JJ.

*Per Curiam*: Chrisma Regina Alley and two associates were observed shoplifting two carts full of merchandise from Wal-Mart. The women were later arrested and the merchandise was seized and returned to the store. A jury found Alley guilty of felony theft of goods worth $1,000 or more. Alley appeals the denial of her motion for acquittal based on insufficient evidence to convict and motion for new trial based on juror misconduct. Alley also alleges she should be granted a new trial because of prosecutorial misconduct. Finding no error that warrants reversal, we affirm.

1

An asset protection associate at the Newton Wal-Mart, Ron Haury, observed three women, one of whom was Alley, loading two carts full of unbagged merchandise into a vehicle in the Wal-Mart parking lot. Based on his training, Haury believed the women may have stolen the goods, so he took note of the vehicle's license plate number and then went into the store and called the police. One officer responded to the Wal-Mart store to review surveillance footage with Haury while another officer began driving around looking for the vehicle the women were seen getting into, a blue Impala.

The blue Impala was located driving southbound from Newton towards Wichita near Park City. When officers located the vehicle, they observed that there were three women inside and that the back seat was full of unbagged goods.

When the vehicle was stopped, the officer who initiated the stop was waiting on confirmation from the officer at Wal-Mart that the merchandise had been stolen. Once the officer on the scene received confirmation, the women were arrested. The women were put into patrol cars, along with all of the merchandise suspected of being from Wal-Mart, and were driven back to the store.

Once they arrived at Wal-Mart, Haury was brought out to identify the women. Haury identified all three as the women he had seen in the parking lot and later on store video surveillance. The merchandise was then removed from the patrol cars and taken into the store for identification. No receipts for the merchandise were ever located.

Inside the store, the merchandise was scanned to determine whether it came from Wal-Mart. Merchandise that registered in the system was rung up and a training receipt was produced that listed each item, showed its value, and computed a total value for all the items taken.

Altogether, 55 items rang up indicating that they were from Wal-Mart. The total value of the goods was $1,054.62 before tax. At trial, there was extensive testimony surrounding the method used for determining which items found in the defendants' vehicle came from the Newton Wal-Mart. Defense counsel emphasized that the determination of whether an item came from Wal-Mart was based on whether Wal-Mart's system recognized the universal product code (UPC). If it recognized the UPC, Haury and the officers assumed it came from the store and the item was added to the training receipt. However, Haury testified that UPCs are universal so that if the same item was sold at both Target and Wal-Mart and was rung into the Wal-Mart system there would be no way to determine which store the item actually came from. Additionally, Haury testified that it would be impossible to tell whether an item that rang into the system came from the Newton Wal-Mart versus some other Wal-Mart store. The only way an item would not ring up is if it was not sold at Wal-Mart at all.

Whether an item would ring up was crucial to determining whether the item was from Wal-Mart because only a small number of the items taken were able to be identified via the store video footage. At trial, video footage was admitted showing the women walking around the store and putting items into carts. The women were not on video the entire time they were in the store; instead, footage showed them in different locations at various times. Right before they left the store, the women were seen walking down an aisle with their carts full of unbagged merchandise. Approximately 45 seconds later, cameras picked the women up again pushing the carts out of the store. At that time, the merchandise was in the same location it had been in the last time the women were seen on video in the store and it was still unbagged.

The jury found both Alley and her codefendant, Laquita Bell, guilty of theft and found that the value of the stolen goods was over $1,000. Alley timely appealed.

3

*There was sufficient evidence for the jury to find Alley guilty of theft of merchandise valued at $1,000 or more.*

On appeal, Alley argues that the State presented insufficient evidence of two elements of the crime charged to convict her. First, she asserts that there was insufficient evidence that she participated in the theft. Second, she contends that there was insufficient evidence that the value of the items taken from the Newton Wal-Mart was actually $1,000 or more.

When sufficiency of evidence is challenged on appeal, this court reviews all the evidence in the light most favorable to the prosecution and determines whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or assess the credibility of witnesses. 299 Kan. at 525. It is only in rare cases where the testimony is so incredible that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 4-6, 660 P.2d 945 (1983).

In support of her first argument, Alley relies primarily on *State v. Green*, 237 Kan. 146, 697 P.2d 1305 (1985). In *Green*, the defendant accompanied two friends from their home in Wellsville to Lawrence. Once in Lawrence, the defendant's friends decided that they wanted to steal tires and wheels from a vehicle. The defendant wanted nothing to do with the theft, so he dropped the other two off near the vehicle and left, returning later to pick them back up. The vehicle the three were driving in was later stopped, and the stolen car parts were discovered. All three were charged with theft. At the defendant's preliminary hearing, both friends testified that the defendant had nothing to do with the

theft. The district court found that the State had presented insufficient evidence of probable cause to continue with prosecution. The State appealed.

The Kansas Supreme Court affirmed the district court's decision, finding there was insufficient evidence of Green's participation in the theft to prosecute him. 237 Kan. at 149. The court emphasized:

> "'It is the rule in this state that mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime are themselves insufficient to establish guilt as an aider and abettor; however, when a person knowingly associates himself with the unlawful venture and participates in a way which indicates he willfully is furthering the success of the venture, such evidence of guilt is sufficient to go to the jury.'" 237 Kan. at 149.

Applying this to Green, the court said the evidence showed only that he was an associate of the principals and that the State lacked even circumstantial evidence of Green's willful participation in the theft. 237 Kan. at 149. However, this case is distinguishable from *Green*. In *Green*, the defendant explicitly told his friends that he wanted nothing to do with the theft they were planning, then he physically left the area to disassociate himself. Here, there was no testimony regarding Alley's intentions. If Alley did not want to be associated with the theft, she did nothing to manifest that desire. Instead, she stayed with her friends in Wal-Mart long enough for them to fill two carts full of merchandise. She then left the store with them in a car full of stolen goods.

For its part, the State relies primarily on this court's decision in an appeal by Alley's codefendant, Bell, on the same issue. The State cites *State v. Bell*, No. 111,265, 2015 WL 2414344, at *8 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* June 12, 2015, for the proposition that circumstantial evidence is sufficient to support a guilty verdict. Citation to *Bell* has some persuasive value in terms of points of law, but there are significant factual differences in the evidence linking Bell to the Wal-Mart theft

versus the evidence of Alley's participation. Video evidence shows Bell taking items off shelves, putting them into a cart, and then pushing the cart out of the store. While video evidence shows Alley walking with Bell, Alley is never seen on surveillance video touching merchandise or pushing it in a cart.

Despite the fact that reliance on *Bell* may be somewhat misplaced here, the State's underlying point that circumstantial evidence is sufficient to prove guilt is well established. See *State v. Wilson & Wentworth*, 221 Kan. 359, 367, 559 P.2d 374 (1977). In *Wilson*, police caught two men from Tulsa, Oklahoma, running from a drugstore they had just broken into in Columbus, Kansas. A block away from the drugstore police found a car with an Oklahoma license plate that was owned by one of the men caught fleeing the drugstore. The defendant Wilson was found lying on the back seat of the car, apparently taking a nap. When asked, Wilson intimated that he knew one of the men arrested but told police that he was in the area because he needed to rest on his drive from Wichita to Tulsa. After acknowledging that "[m]ere association with the principals who actually commit the crime or mere presence in the vicinity of the crime are themselves insufficient to establish guilt," the Kansas Supreme Court found that "the foregoing evidence gives rise to a reasonable inference that Bill Reese Wilson did knowingly associate himself with the unlawful venture and was participating as the driver of the Wentworth car." 221 Kan. at 367-68. With that, the court affirmed Wilson's conviction. 221 Kan. at 368; see also *State v. Dressel*, 241 Kan. 426, 430-31, 738 P.2d 830 (1987) (defendant found guilty based on circumstantial evidence and his association with codefendants against whom there was direct evidence).

The evidence in *Wilson* required the jury to infer quite a bit more about Wilson's intent and involvement with the robbery of the drugstore than was required to find Alley guilty here. Alley was seen, on video, walking around the Wal-Mart with two other women as they loaded carts full of merchandise. She was seen in the parking lot at the vehicle the stolen merchandise was being loaded into and she was in the vehicle with the

6

stolen goods when it was stopped by police. Viewing the evidence in the light most favorable to the State, as this court is required to, there was sufficient circumstantial evidence that a rational factfinder could find Alley guilty of theft.

Alley's second argument relating to the sufficiency of the evidence involves the value of goods taken. Alley argues that the State did not sufficiently prove that all items which went into the calculation of the value were actually taken from the Newton Wal-Mart. As to this second point, *Bell* is persuasive.

On appeal Bell argued, as Alley does now, that there was insufficient evidence that "all the merchandise taken from the vehicle was taken from the Newton Wal-Mart and that its value was equal to or greater than $1,000." 2015 WL 2414344, at *8. This court determined that evidence supporting the valuation was overwhelming, reasoning:

> "There was a video showing Bell leaving Wal-Mart with a cart full of items, and there was testimony from Haury and various police officers that Bell was pulled over in a vehicle matching the make and model reported leaving Wal-Mart with a trunk full of items seen on the video. Bell was unable to produce a receipt showing she had purchased the items. The items were taken back to Wal-Mart, and all the items were scanned. The items with merchandise with UPC codes that were found in Wal-Mart's database added up to over $1,000. At trial Bell contended that the items could have come from other stores such as Target and that the State could not conclusively prove the items came from Wal-Mart. However, when evaluating the sufficiency of the evidence, even the gravest offense can be based entirely on circumstantial evidence. When the evidence is reviewed in the light most favorable to the prosecution, a rational factfinder could have found Bell guilty beyond a reasonable doubt." 2015 WL 2414344, at *8.

Since Bell's appeal of this issue focused solely on the valuation of the goods stolen, the analysis can be directly applied to Alley. The two women were tried together, so the evidence presented regarding the value of the merchandise was identical for both. As to this issue, there were no factual differences between the two defendants that would

7

warrant a different analysis. Alley makes no new arguments and offers no unique rationale that would force this panel to consider the issue differently.

Accordingly, we conclude that there was sufficient evidence presented regarding the valuation of stolen goods that a rational factfinder could have determined beyond a reasonable doubt that over $1,000 worth of merchandise was taken from the Newton Wal-Mart. The district court did not err when it denied Alley's motion for acquittal.

*The district court did not err when it denied Alley a new trial based on juror misconduct.*

Alley next argues that the district court should have granted her a new trial due to juror misconduct. After the trial in this case, one juror came forward and notified the judge that he had heard another juror say that the reason Alley and her friends were at the Newton Wal-Mart was that they had been banned from the Park City Wal-Mart, a store much closer to the women's homes. Based on this information the district court held a hearing at which the juror who came forward with the information, C.B., and the juror who made the statement, R.A., were recalled to testify.

R.A. testified that he did not remember making the statement in question. He testified that he did not know any of the defendants and did not have any prior personal knowledge of the defendants. R.A. testified that if he had made a statement regarding the defendants being banned from other Wal-Marts, it was likely just speculation on his part based on information that had been presented during the trial.

Neither R.A. nor C.B. knew if other members of the jury heard the statement. Both R.A. and C.B. testified that the statement did not impact their decision to find the defendants guilty. Based on the jurors' testimony, the district court determined that any misconduct that may have taken place was not substantial enough to give rise to a mistrial in that it did not substantially prejudice the defendants' right to a fair trial.

On appeal, a district court's denial of a motion for new trial based on juror misconduct is reviewed for an abuse of discretion. *State v. Mathis*, 281 Kan. 99, 103, 130 P.3d 14 (2006). Generally, judicial action constitutes an abuse of discretion if (1) no reasonable person would have taken the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). In the context of juror misconduct, an abuse of discretion will be found "'if the defendant can show that (1) an act of the jury constituted misconduct and (2) the misconduct substantially prejudiced the defendant's right to a fair trial. [Citations omitted.]'" *Mathis*, 281 Kan. at 104.

In *Bell*, Alley's codefendant argued this issue on appeal. See 2015 WL 241344, at *3. This court determined:

> "C.B.'s statements regarding R.A.'s alleged statements should be excluded as evidence of mental processes because the statements expressed a mere opinion.
>
> "Even if this court decided to allow the comments and found that they rose to the level of misconduct, Bell is unable to show the alleged misconduct substantially prejudiced the jury." 2015 WL 241344, at *4.

"A party is denied the right to a fair trial when a juror introduces evidence on material issues of fact to the jury during its deliberations." *Saucedo v. Winger*, 252 Kan. 718, 733, 850 P.2d 908 (1993). This is not what occurred. R.A. was merely speculating on why Bell was at the Newton Wal-Mart. He was not introducing evidence on a material issue of fact. The district court's decision to deny Bell's motion for a mistrial was not arbitrary, fanciful, or unreasonable; based on an error of law; or based on error of fact.

We agree with the court's analysis in *Bell*. At the hearing at which jurors C.B. and R.A. were recalled, Alley had the opportunity, through her attorney, to examine the jurors just as Bell did. There was no testimony at the hearing that R.A.'s statement was

9

specifically aimed at Alley or had any unique impact on the jury's decision regarding her guilt as opposed to Bell's. Alley does not argue that there are any unique facts or circumstances that would merit a different ruling by this court in her case. Accordingly, we affirm the district court's decision to deny Alley a new trial due to juror misconduct.

*The prosecutor's comments do not require reversal.*

Alley alleges six separate instances of prosecutorial misconduct in closing argument, as well as direct examination. Appellate review of an allegation of prosecutorial misconduct involving improper comments to the jury requires a two-step analysis. First, the court determines whether the prosecutor's comments were outside the wide latitude the prosecutor is allowed in discussing the evidence. If misconduct is found, the appellate court must go on to the second step in which it determines whether the improper comments compel reversal; that is, whether the statements prejudiced the jury against the defendant so that the defendant was denied a fair trial. *State v. Armstrong*, 299 Kan. 405, 416, 324 P.3d 1052 (2014). We will begin by examining each of Alley's six claims of error to determine if any of them constitute misconduct.

First, Alley claims the State elicited inadmissible evidence, in bad faith, during closing arguments when the prosecutor said: "First of all, if Ms. Alley is from Wichita, why would she drive to Newton to shop? Because she's not known here and maybe she's known in Wichita?" Alley contends this statement "clearly created an insinuation of Ms. Alley's guilt that was not part of the evidence, and contrary to the Trial Court's ruling in the motion in limine." The State responds that the statement was speculation on the part of the prosecutor that Alley had chosen the Newton Wal-Mart in order to conceal her identity. Although Alley references a motion in limine, neither the motion nor the resulting order is included in the record on appeal, so we are unable to comment on whether it violated the order in limine although we can review whether it was improper closing argument.

10

Prosecutors have wide latitude to craft their closing arguments, which includes the ability to draw reasonable inferences from the evidence presented during trial. *State v. King*, 288 Kan. 333, 351, 204 P.3d 585 (2009). This latitude is not unlimited. A prosecutor must confine his or her arguments to facts that are in evidence. *State v. Hall*, 292 Kan. 841, 848, 257 P.3d 272 (2011). "[W]hen a prosecutor argues facts not in evidence, the first prong of the prosecutorial misconduct test is met, and we must consider whether the misstatement of fact constitutes plain error." 292 Kan. at 848.

During Alley's trial, there was testimony that the defendants were stopped driving south from Newton, somewhere near Park City. However, there was no evidence presented that Alley or either of the other defendants lived in Wichita. Therefore, the prosecutor's statement that Alley was from Wichita introduced a fact that was not in evidence. Because the fact was not in evidence, the State cannot cure the statement by arguing that the suggestion Alley was in Newton to avoid detection was a reasonable inference from the evidence. When a prosecutor argues a fact not in evidence, he or she commits misconduct. 292 Kan. at 848.

The second alleged instance of misconduct occurred when the prosecutor said that the evidence "'shows them out of the store and putting merchandise in the car.'" Alley argues that this was a misstatement of the evidence because Haury only testified that he watched the transfer of goods from the carts to the car for a short period of time and could not specifically remember if he had seen Alley assist with the transfer.

This statement was not a misstatement of the evidence; it was a near verbatim recitation of Haury's testimony. During his testimony, Haury was asked to read a portion of his transcript from the preliminary hearing. The testimony was:

11

"A: So, based on that testimony, I think it's safe to assume that you don't know for sure if all three individuals participated in the loading of the items in the car. Is that a true statement?

"Q: And then can you read the answer?

"A: At that time I just noticed the individuals putting them in the car, so I can't tell you at the split second I saw three of them putting them in the car."

Third, Alley alleges the prosecutor committed misconduct when he expounded on a hypothetical Alley has dubbed the "David Stucky mountain bike defense." In this hypothetical, the prosecutor asked the jury to consider what arguments Stucky, Alley's attorney, would make if he was trying to identify property, specifically a mountain bike that had been stolen from him. The prosecutor suggests that Stucky would rely on circumstantial evidence to identify the bike as his. The prosecutor ends the hypothetical saying: "Mr. Stucky is not making that argument today. But what are those statements? They're common sense arguments, are they not?" The prosecutor goes on to talk about using common sense in this case to see how circumstantial evidence provides proof of guilt. Alley argues that this hypothetical was a personal attack aimed at her defense counsel that diverted the attention away from the real facts of the case and served to inflame the jury.

Statements courts have found inflammatory to the point of constituting misconduct include: statements asking the jury to send a message to the community, statements that certain behavior should not be tolerated in the community, and pleas for justice or protection for victims of crimes. See *Hall*, 292 Kan. 853-54; *State v. Tosh*, 278 Kan. 83, 92, 91 P.3d 1204 (2004).

The prosecutor's comments here do not rise to this level. The "David Stucky mountain bike defense" is nothing more than the prosecutor's attempt to demonstrate how

12

evidence, although circumstantial, can be sufficient to prove criminal activity. While it may not have been wise for the prosecutor to use defense counsel's name in its hypothetical, nor was it a particularly effective hypothetical, the hypothetical itself was not inflammatory and the inclusion of defense counsel's name alone did not transform it into misconduct.

Next, Alley argues that the prosecutor committed misconduct by expressing his own opinion regarding Alley's guilt. Alley cites a number of statements made by the prosecutor. Three of the complained of statements can be grouped and discussed together: "I submit that you will find and should find in your deliberations that the State has met its burden"; then, discussing the elements the State was required to prove: "So it's the State's position that those four elements are settled and you should not have a great deal of difficulty dealing with those four elements"; and "You have theft of property in excess of $1,000. All five of those elements have been met here. When you do your verdict form, $1,000 or more. Okay?"

Kansas courts have repeatedly found that it is not misconduct when a prosecutor says "I/we" when discussing the elements of a crime the prosecution was required to prove and the relevant evidence that he or she introduced. *Hall*, 292 Kan. 852-53; *State v. Corbett*, 281 Kan. 294, 315-16, 130 P.3d 1179 (2006). Additionally, prosecutors may argue that the evidence shows the defendant is guilty and that the jury should convict. *State v. Peppers*, 294 Kan. 377, 400, 276 P.3d 148 (2012) ("It is necessary, however, for a prosecutor to say something akin to 'the evidence shows defendant's guilt' in order to make a statement merely directional and not an expression of the prosecutor's personal opinion."). The statements cited by Alley fall within the parameters of acceptable advocacy.

Alley additionally complains of the prosecutor's closing statement: "So I say to you today that the defendant—you should not accept the defendant's defense of cartless at Wal-Mart in Harvey County. It doesn't sell. It doesn't sell."

Specifically, Alley complains that it was improper for the prosecutor to say "It doesn't sell."

The Kansas Supreme Court has held that it is clear misconduct where a prosecutor accuses a defendant of lying. *State v. Davis*, 275 Kan. 107, 121, 61 P.3d 701 (2003). However, prosecutors have freedom "to craft an argument that includes reasonable inferences based on the evidence and [to argue] that when a case turns on which of two conflicting stories is true, certain testimony is not believable." 275 Kan. at 121; see also *State v. Baker*, 281 Kan. 997, 1015, 135 P.3d 1098 (2006) ("the prosecutor's comments regarding the feasibility of Baker's story were within the wide latitude prosecutors are allowed in discussing the evidence").

The prosecutor's statement here was not an attack on the defendant herself—Alley did not testify. The remark was not meant to disparage or comment on the defendant's credibility but, rather, to argue that the prosecution's story of events was more believable than the account crafted by defense counsel in opening and closing arguments. This statement did not constitute misconduct.

Finally, Alley refers the court back to a direct examination during which the following exchange took place:

"Q.    Tell the jury how many receipts—how many receipts did you find in and about this merchandise?

"A.    Receipts?

14

"Q.     Receipts.

"A.     We didn't find any receipts.

"Q.     Was this with some indication to you as to maybe the source of—

        "MR. FISHER:  I'm going to object, Your Honor. Calls for speculation.

        "MR. STUCKY:  Same objection.

        "THE COURT:  I'll sustain the objection.

"Q.     What, if anything, did this indicate to you?

"A.     That I believe the items that were in the back seat were from Wal-mart."

The issue here is whether the prosecutor purposefully sought out inadmissible evidence that invaded the fact-finding province of the jury.

K.S.A. 60-456(a) limits nonexpert opinion or inference testimony to situations in which a judge finds the testimony is rationally based on the witness' observations and aimed at helping the jury understand the testimony of the witness. Opinion or inference testimony that meets this criteria is permissible even when the testimony "embraces the ultimate issue or issues to be decided by the trier of the fact." K.S.A. 60-456(d). A police officer may give lay testimony that contains opinions or inferences "concerning a relevant topic within his [or her] personal knowledge and experience which is outside a normal person's knowledge." *State v. McGraw*, 19 Kan. App. 2d 1001, 1013, 879 P.2d 1147 (1994).

Here, Officer Brian Rousseau was asked about the fact that no receipts were found for the unbagged merchandise in the car Alley and her companions were driving.

Specifically, Rousseau was asked if the lack of receipts indicated anything to him. As a police officer for 14 years with experience investigating crimes, Rousseau had unique, personal knowledge regarding theft that allowed him to shed light on the significance of the evidence or lack thereof. In her appeal, Bell also argued that this line of questioning was in error. There, this court found that the testimony was permissible, reasoning:

> "The ultimate issue in the case was whether Bell stole the items in the vehicle from Wal-Mart. . . . [Officer Rousseau] testified about what conclusions he drew from finding items in the vehicle without being able to find receipts for the items. This conclusion provides the basis why the officer took the three women and property into custody and returned to Wal-Mart for further investigation." *Bell*, 2015 WL 2414344, at *7.

The *Bell* court went on to say that even if it was erroneous, the error was harmless. 2015 WL 2414344, at *7-8.

As with several other issues in this appeal, there is no reason for us to depart from the *Bell* court's findings. Alley would not have been impacted any differently by this testimony than Bell was. Alley adds no additional argument that would require this court to consider the issue in a new light and reach a different result. We find that the prosecutor did not commit misconduct in eliciting this testimony.

Having found one instance of prosecutorial misconduct, when the prosecutor discussed facts not in evidence, it is next necessary to determine whether the misconduct was so serious as to jeopardize Alley's opportunity for a fair trial. Kansas courts look to three factors in making this determination:  whether the misconduct was gross and flagrant, whether the misconduct showed ill will on the prosecutor's part, and whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of the jurors. *Williams*, 299 Kan. at 540. Under this test, the party benefitting from the alleged prosecutorial misconduct must prove beyond a reasonable doubt that the error complained of did not affect the outcome of the trial in

light of the entire record, *i.e.*, that there is no reasonable possibility that the error contributed to the verdict. 299 Kan. at 541.

To determine whether misconduct was gross and flagrant, courts often ask whether a prosecutor's conduct or statement was "contrary to a longstanding rule of law." *Armstrong*, 299 Kan. at 419. It is a clearly established, longstanding rule that a "prosecutor must confine his or her remarks to matters in evidence." *State v. Ly*, 277 Kan. 386, 393, 85 P.3d 1200, *cert. denied* 541 U.S. 1090 (2004). Because the prosecutor here violated this fundamental principle, we find his statement was gross and flagrant.

Ill will is often indicated by misconduct that is deliberate and repeated. *Williams*, 299 Kan. at 546. Here, the prosecutor made reference to the fact that Alley was from Wichita and questioned why she was at the Newton Wal-Mart only once. In the transcript, this violation amounted to three lines in a closing argument that spanned nearly 13 pages of 25 lines each. Because of the brevity of this comment, it would be difficult to find ill will in this situation. Alley alluded to a motion in limine in her brief—if the motion and resulting order had been included in the record and the order had specifically addressed this issue, the analysis would likely be different. As it is, this court can only make decisions based upon the record provided by the appellant. See *State v. Bridges*, 297 Kan. 989, 1001, 306 P.3d 244 (2013) (holding that a defendant possesses the burden to designate a record that affirmatively shows prejudicial error).

Finally, this court must determine whether the evidence presented in this case was so overwhelming that the prosecutor's misconduct likely had no impact on the jury's outcome. *Williams*, 299 Kan. at 541. This is a case where the evidence of guilt was very clear. Wal-Mart had video of the women walking through the store and loading carts with merchandise. Footage showed them walking near the front of the store then, less than a minute later, walking out the door. Haury saw the women in the parking lot loading the unbagged merchandise into a vehicle. Haury made note of the vehicle's make, model, and

17

license plate number. Within a short period of time the car was stopped on the highway driving back towards Wichita. Haury was able to identify the women as the people he saw firsthand in the parking lot and on video footage and was able to identify a number of the large items found in the car as belonging to Wal-Mart based on the surveillance video.

Additionally, a curative instruction was given in this case. The court instructed the jury: "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." The Kansas Supreme Court weighs curative instructions as a mitigating factor when determining whether misconduct likely impacted a jury so that a defendant was denied a fair trial. *Williams*, 299 Kan. at 548 ("Because we presume the jury followed the court's instructions, the court's guidance served to mitigate any potential harm caused by the prosecutor's statements.").

In order for this final factor to cure the misconduct, this court must find that the harmless error test has been met. *Armstrong*, 299 Kan. at 417. In other words, considering the record as a whole, there is no reasonable possibility that the error contributed to the verdict. The party benefiting from the error bears the burden of proof. 299 Kan. at 417.

Here, the State argues the harmless error test has been met. The State points to the significant evidence of Alley's guilt and the relative insignificance of the prosecutor's misstatement to conclude that "[t]here is no reasonable possibility that any error committed by the prosecutor was so strong that it swayed the jury. What swayed them was the evidence against Ms. Alley." We agree.

18

While the evidence of Alley's guilt is largely circumstantial—no evidence of Alley pushing a cart or putting an item into a cart was admitted, and Haury testified that he did not observe the women loading merchandise into the car long enough to know if all three were assisting in the process—it is nevertheless substantial. This is not a case where the prosecutor had to work to weave together a coherent narrative of guilt during closing arguments, the evidence spoke for itself. Video surveillance provided concrete proof that Alley was in Wal-Mart with two associates long enough for the three of them to walk around the store and fill two carts full of merchandise. While the movements of the women could not be tracked the entire time they were in the store, surveillance showed them at various points during their shopping trip. Just before leaving the store, one camera caught the women walking down an aisle and another, in less time than it would have taken them to check out, showed them exiting the store. An eyewitness saw the three women loading the unbagged merchandise into the vehicle in which the women were later located. No receipt was found in the vehicle, and none of the women offered one to police as evidence that the merchandise had been lawfully obtained.

Looking at the weight of evidence against Alley it is clear that the jury had ample grounds for finding her guilty without considering the prosecutor's improper statement. The prosecutor's statement was made in passing and was not a fact the State relied upon to prove its case. Given the strong evidence against Alley and the relative insignificance of the prosecutor's misstatement, it is safe to say that there was no reasonable possibility that the jury verdict was influenced by the prosecutor's misconduct. The district court's denial of a new trial is affirmed.

Affirmed.