IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,990

STATE OF KANSAS,
*Appellee*,

v.

ROBBIE A. THOMAS,
*Appellant*.

SYLLABUS BY THE COURT

1.

To convict the defendant of aggravated battery under K.S.A. 2015 Supp. 21-5413(b)(1)(A), the State must prove that a defendant acted while knowing that some type of great bodily harm or disfigurement of another person was a reasonably certain result.

2.

A prosecutor has wide latitude in crafting arguments and drawing reasonable inferences from the evidence but may not comment on facts outside the evidence. Any argument must accurately reflect the evidence, accurately state the law, and cannot be intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law.

3.

In a cumulative error analysis, if any of the errors implicate a constitutional right, the constitutional harmless error standard of *Chapman v. California*, 386 U.S. 18,

1

87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), applies. The court can affirm only after examining the entire record and being convinced beyond a reasonable doubt that there is no reasonable possibility the error affected the verdict.

4.

The Virginia crime of assault and battery, as defined by Virginia common law, is not identical to or narrower than the Kansas crime of battery as defined by K.S.A. 2015 Supp. 21-5413. Thus, under *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018), a court cannot score a Virginia assault and battery conviction as a person crime in a defendant's criminal history per K.S.A. 2015 Supp. 21-6811(e).

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 9, 2018. Appeal from Chautauqua District Court; JEFFREY D. GOSSARD, judge. Opinion filed July 24, 2020. Judgment of the Court of Appeals affirming the district court is affirmed in part, reversed in part, and vacated in part. Judgment of the district court is affirmed in part, reversed in part, and vacated in part, and the case is remanded with directions.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kristafer R. Ailslieger,* deputy solicitor general, argued the cause, and *Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.:  Robbie A. Thomas appeals his convictions and sentences for aggravated battery, abuse of a child, and aggravated endangering of a child. He alleges

2

two trial errors. First, Thomas argues—and the State concedes—that the district court erred by giving jury instructions that allowed the jury to convict him of aggravated battery if it found that he intended the conduct but not the harm. Second, he argues—and we hold—the prosecutor committed error during closing statements by repeatedly telling jurors to acquit only if the jurors thought it was acceptable to inflict injuries on "your child." The statements distracted the jury from the facts and law and, instead of asking them to hold the State to its burden of proving the elements of the charged crimes, focused the jurors on their personal and emotional reactions.

We also hold the cumulative effect of these errors requires us to reverse Thomas' aggravated battery conviction. But we affirm his convictions for abuse of a child and aggravated endangering of a child. Finally, we hold the district court erred by scoring a 2001 out-of-state conviction from Virginia for domestic assault and battery as a person crime because the elements of the Virginia crime were broader than the Kansas crime of battery.

FACTUAL AND PROCEDURAL BACKGROUND

Thomas was watching his children and his girlfriend's children, when his girlfriend's two-year-old son soiled himself. Thomas struck the child several times on the abdomen and buttocks and took him into the bathroom for cleaning. Thomas sprayed the child's buttocks with scalding hot water from a shower wand and inflicted first- and second-degree burns on the child's torso, lower back, buttocks, and groin area.

Thomas' 12-year-old daughter at first told police that Thomas had taken the boy into the bathroom after the child had soiled himself. The daughter said she heard the boy

3

screaming "like he was being killed" while Thomas repeatedly said, "Have you had enough?" The daughter also told police that she saw Thomas spank the boy five or six times before going into the bathroom, and she continued to hear Thomas spanking the boy after the door was closed.

At trial, however, the daughter said she had lied to police because she was scared. She testified that her father was not abusive and that the two-year-old's injuries occurred when the child's mother spilled hot ramen soup on him.

Thomas testified on his own behalf and said that the hot water did not work at the residence. Thomas testified that he had taken the two-year-old into the bathroom and began filling the tub but left the bathroom briefly because the other children were fighting. When he left the room, the two-year-old crawled into the tub on his own.

A physician assistant at the Sedan City Hospital who first saw the two-year-old testified that he observed first-degree burns on the child's nipple area and torso, and second-degree burns on the child's buttocks. The child complained of pain in the abdomen, and the mother reported that Thomas had hit the child in the abdomen several times. The physician assistant testified the burn marks were not consistent with injuries caused by placing a child in a bathtub of scalding water because there were no burn marks on the feet, hands, or knees. He testified the injuries were consistent with having a shower wand of hot water held in one area.

A pediatric specialist at Saint Francis Via Christi hospital in Wichita, where the child was transferred for treatment, testified the child had second-degree burns on his perineum, anal area, and gluteal crease. She said the injuries were not consistent with

4

having hot ramen soup spilled on the child, nor were they consistent with a child crawling into a bathtub. The doctor confirmed the injuries were consistent with having a shower wand of hot water held in one area.

The jury returned guilty verdicts on all three charges: aggravated battery for the burn injuries, abuse of a child for the bruising caused by hitting the child, and aggravated endangering of a child. At sentencing, Thomas objected to the criminal history score as calculated in the presentence report because it included a Virginia domestic assault and battery conviction as a person felony. The district court ruled the Virginia conviction was comparable to Kansas battery and counted as a person felony. The court sentenced Thomas to 109 months in prison.

Thomas appealed to the Court of Appeals. The panel affirmed Thomas' convictions and sentence after holding the district court committed one error in defining the mental state element of aggravated battery, but the error was harmless. *State v. Thomas*, No. 115,990, 2018 WL 793826, at *2-3, 7-9 (Kan. App. 2018) (unpublished opinion).

Thomas timely petitioned for review. We granted review and have jurisdiction under K.S.A. 20-3018(b) (petition for review of Court of Appeals decision).

AGGRAVATED BATTERY JURY INSTRUCTIONS

Thomas first argues the jury instructions allowed the jury to convict him of aggravated battery under K.S.A. 2015 Supp. 21-5413(b)(1)(A) without finding he acted

5

while knowing that great bodily harm or disfigurement was reasonably certain to occur. The State concedes our decision in *State v. Hobbs*, 301 Kan. 203, 340 P.3d 1179 (2015), controls this issue and that under the decision the aggravated battery instructions were erroneous.

In *Hobbs*, we held "knowingly," as used in the context of the elements of aggravated battery, means more than just proving that the defendant intended to engage in the underlying conduct. The State must prove the defendant acted when he or she was aware the conduct was reasonably certain to cause the result. 301 Kan. at 211.

But, here, the district court erroneously instructed the jury that aggravated battery required "merely the intent to engage in the underlying conduct which results in great bodily harm. The State is not required to prove that the defendant intended the precise harm or result that occurred." The court compounded the error by giving another instruction that defined "knowingly" with three alternative definitions, only one of which required the jury to find that Thomas was aware his conduct was reasonably certain to cause the harm to the child. The other alternatives allowed the jury to convict Thomas if it found he was aware of the nature of his conduct or the circumstances in which he was acting.

Although the State concedes error, it argues the error does not require us to reverse Thomas' conviction. The Court of Appeals panel agreed. The panel noted that Thomas had not objected to the instruction and the clear error standard found in K.S.A. 2015 Supp. 22-3414(3) applies. Under this standard, an erroneous jury instruction requires reversal only if the appellate court is firmly convinced the jury would have reached a different verdict had the error not occurred. *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d

6

1 (2018). The panel concluded the trial outcome would not have differed even if "the jury [had] been properly instructed on the knowledge element of aggravated battery." *Thomas*, 2018 WL 793826, at *3.

Before us, Thomas notes the Court of Appeals did not discuss his testimony that the house did not consistently have hot water. Given that no evidence contradicted his testimony, he argues the jury could have believed he did not know his conduct of spraying the child with water would harm the child. Given this uncontroverted evidence, he argues a properly instructed jury would have convicted him of a lesser included offense of child abuse. He suggests this outcome would have been consistent with the child abuse statute, K.S.A. 2015 Supp. 21-5602, because it requires only an intent to do the act. Unlike with aggravated battery charges, the State did not have to prove an intent to cause the injury to obtain the child abuse conviction. Cf. *State v. Alderete*, 285 Kan. 359, 362-65, 172 P.3d 27 (2007) (previous version of aggravated battery requires intent to cause harm, but child abuse only requires an act which causes harm).

We defer for the moment our discussion of whether this error necessitates reversal because Thomas also argues the Court of Appeals erred in holding that the prosecutor did not commit error and in not accumulating the harm of the instruction error with the prosecutorial error.

PROSECUTORIAL ERROR

Thomas bases his prosecutorial error argument on two statements made during the State's closing argument. Before each of the two statements, the prosecutor showed the jurors photos of the child's injuries and then told them to acquit Thomas if they thought it

7

was okay to do that to a child. Thomas asserts those remarks were improper because they inflamed the passions and prejudices of the jurors and distracted them from their duty to make decisions based on the evidence and law. We agree.

When analyzing claims of prosecutorial error, we use a two-step process. First, to determine error has occurred, we must decide whether "the act complained of falls outside the wide latitude afforded to prosecutors to conduct the State's case in a way that does not offend the defendant's constitutional right to a fair trial." *State v. Chandler*, 307 Kan. 657, Syl. ¶ 6, 414 P.3d 713 (2018). If error is found, we must then determine whether the error prejudiced the defendant's due process rights to a fair trial. 307 Kan. 657, Syl. ¶ 6. In evaluating this potential prejudice, we use the traditional harmlessness inquiry in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). Under this inquiry, prosecutorial error is harmless "if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109 (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011]).

Generally speaking,

"A prosecutor has wide latitude in crafting arguments and drawing 'reasonable inferences from the evidence but may not comment on facts outside the evidence.' Any argument 'must accurately reflect the evidence, accurately state the law, and cannot be "intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law."' [Citations omitted.]" *State v. Longoria*, 301 Kan. 489, 524, 343 P.3d 1128 (2015).

8

The prosecutor is constrained from inviting the jury to rely on considerations outside the record because the jury's fundamental task is to decide a case based on a calm and dispassionate consideration of the evidence and controlling law. *State v. Holt*, 300 Kan. 985, 998, 336 P.3d 312 (2014); *State v. Hall*, 292 Kan. 841, 853, 257 P.3d 272 (2011); *State v. Ruff*, 252 Kan. 625, 633, 847 P.2d 1258 (1993); Gershman, Prosecutorial Misconduct § 11:4 (2d ed. 2019). Thus, a prosecutor's comments are improper if they encourage jurors to consider emotions, passions, or prejudices as a basis for their verdict, because emotions, passions, and prejudices are not facts. *Holt*, 300 Kan. at 998 (improper to encourage jurors to rely on emotions to convict); *Hall*, 292 Kan. at 853 (prosecutors are not allowed to inflame passions or prejudices of jurors and distract from duty to make decisions based on evidence). Nor may a prosecutor make a "golden rule" argument that encourages the jurors to place themselves in the position of a victim or a victim's family member. *State v. Lowery*, 308 Kan. 1183, 1208-09, 427 P.3d 865 (2018).

This court has emphasized that claims of prosecutorial error are fact specific and outcomes will depend on the particulars of each case. *Sherman*, 305 Kan. at 110-11; see also *United States v. Hasting*, 461 U.S. 499, 508-09, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983) (observing that *Chapman* affirmatively rejected a per se rule).

Here, Thomas first cites to the prosecutor showing the jury a picture of bruising on the child's body and asking, "Do you think that's okay to do to your child? Then you better acquit him, but if it's not okay, you better find him guilty." The prosecutor made these statements during the portion of the State's closing argument in which the prosecutor discussed the child abuse charge, which the prosecutor explained was based on the bruising Thomas caused.

9

To fully understand the comment and the Court of Appeals' analysis it is helpful to more fully consider the context of the statements. The prosecutor repeated the court's instruction defining the elements of the charge and told the jury it had to find that Thomas "knowingly inflicted cruel and inhuman punishment on" the child. The prosecutor next displayed a photograph to the jury and said:

> "This is a photograph of [the child's] back. Where do the bruises come in? From the waist up to the middle of his back.
>
> "Where did [Thomas' 12-year-old daughter] say this happened? In their home on July second when Mr. Thomas was disciplining him in the potty training. It's simple. Do you think that's okay? Do you think that's okay to do to your child? Then you better acquit him, but if it's not okay, you better find him guilty."

The Court of Appeals panel held this statement did not encourage the jurors to consider factors outside the evidence and the law. The panel offered several reasons for its conclusion. First, it indicated the prosecutor was merely asking the jury to consider whether the bruising constituted cruel and inhuman punishment. Despite this conclusion, the panel also recognized the statement could be read to distract the jury from the State's burden of proof:

> "Viewed in isolation, one might take this to mean that a juror should vote to convict solely based on a finding that the injury shown in [the photograph] was the product of cruel and inhuman[] physical punishment, thereby relieving the State of its obligation to prove the other essential elements of the crime." *Thomas*, 2018 WL 793826, at *5.

10

We agree that read in isolation the prosecutor's arguments clearly encouraged the jury to convict based on an assessment of whether the jury thought Thomas' actions were okay, not on whether the State had met its burden of proving the elements. But we disagree with the panel's conclusion that the meaning changed when read in context of other statements. The prosecutor made no attempt to relate the statement to the cruel and inhuman punishment element or any other element. And the prosecutor shifted the jurors' attention away from the case to how they felt about whether "that's okay to do to *your child*." (Emphasis added.) The last two words invited jurors to consider the crime in the context of families or community, either of which is error. See *Lowery*, 308 Kan. at 1208-09 (error to place jurors in shoes of victim); *State v. Ruff*, 252 Kan. 625, 631-33, 847 P.2d 1258 (1993) (prosecutor errs by encouraging jury to consider the effects of lawlessness in the community). We thus reject the first reason given for the panel's conclusion the prosecutor did not err.

The panel gave two other reasons for determining no error occurred:

- "The jurors were each provided individual copies of the jury instructions which they could follow as the judge read them and as the attorneys referred to them in their closing arguments"; and
- The district court judge had told the jury to "disregard any statement concerning the law that was not contained in these instructions." 2018 WL 793826, at *5.

While these are valid considerations, they apply to the harmless error analysis, not to the analysis of whether the comments were error. We thus conclude the prosecutor erred.

11

We agree with the panel's holding that the statements about the child abuse charge were harmless, however. As the Court of Appeals noted, although not directly tied to elements, the statements came as the prosecutor was listing facts that supported what the State had to prove: when the crime happened, where it occurred, and whether it was cruel and inhuman punishment. And the prosecutor had just reminded the jury of these elements, as had the judge. Given this context, we conclude the comments do not constitute clear error requiring us to reverse the child abuse count.

The prosecutor made the second if-you-think-this-is-okay-acquit statement while addressing the aggravated battery charge during the State's closing argument. The prosecutor discussed the need for the jury to find that Thomas had caused great bodily harm. The prosecutor pointed to a photograph that showed scarring from the burns and said, "[I]f that's not great bodily harm or disfigurement, find him not guilty. If you think it's okay to do that, find him not guilty. If it's not okay to do that, you must find him guilty."

The panel held the prosecutor did not err, reasoning: "[W]e do not think any reasonable juror would harbor the notion that in discussing [the photographs] in relation to the aggravated battery charge the prosecutor was urging the jurors to disregard the other elements of the crime and convict Thomas solely upon the harm shown in these photo exhibits." Again, the panel seems to have conflated the analysis of error with the question of whether any error is harmless. Because other factors offset the statements' effect does not mean they were not error.

The panel also seemed to excuse the statements because they were "inartfully expressed." 2018 WL 793826, at *5. But the fact the statements were repeated almost

12

word for word in the discussion of two different charges indicates a deliberately phrased argument. Applying a constitutional standard of harmlessness, we are swayed—as we think a jury would have been—by the fact the prosecutor repeated the argument, inviting the jury to make its own emotional assessment about what was okay. More impactful on our consideration of the harm, the prosecutorial error was not the only error impacting the aggravated battery charge. Consequently, we move to Thomas' argument that the harm from the instruction error and the prosecutorial error had a combined impact that requires reversal of his aggravated battery conviction.

CUMULATIVE ERROR

Multiple errors may require reversal if the combined prejudicial effect deprives the defendant of a fair trial. *State v. Tully*, 293 Kan. 176, 205, 262 P.3d 314 (2011). Such is the case here.

The test for cumulative error is whether the errors substantially prejudiced the defendant and denied the defendant a fair trial given the totality of the circumstances. In making the assessment, an appellate court examines the errors in context, considers how the district court judge addressed the errors, reviews the nature and number of errors and whether they are connected, and weighs the strength of the evidence. *Holt*, 300 Kan. at 1007-08. If any of the errors being aggregated are constitutional, the constitutional harmless error test of *Chapman* applies, and the party benefitting from the errors must establish beyond a reasonable doubt that the cumulative effect of the errors did not affect the outcome. *Tully*, 293 Kan. at 205; *State v. Ward*, 292 Kan. 541, 569-70, 256 P.3d 801 (2011). Where, as here, the State benefitted from the errors, it has the burden of establishing the errors were harmless. See *State v. Akins*, 298 Kan. 592, 600, 315 P.3d

13

868 (2014) ("The State bears a higher burden to demonstrate harmlessness when the error is of constitutional magnitude.").

Here, because the prosecutor's statements implicated Thomas' constitutional right to a fair trial, the *Chapman* constitutional harmless error standard applies. Under this standard, we cannot say the errors are harmless unless we are convinced beyond a reasonable doubt that the errors did not affect the outcome of the trial. *Ward*, 292 Kan. at 569-70. We hold the two errors when considered together were not harmless.

The statutory language of the aggravated battery statute, K.S.A. 2015 Supp. 21-5413(b), required the jury to find that Thomas acted with an awareness that his conduct was reasonably certain to cause harm, although not necessarily the specific harm that resulted. *Hobbs*, 301 Kan. at 210-11. But the instruction given here allowed the jury to find Thomas guilty if it determined he intended to engage in the conduct. Thus, we cannot be sure the jury based its verdict on the requisite level of culpability. We recognize serious credibility issues surround Thomas' defense that the house did not consistently have hot water, and those credibility issues might have prevented us from determining clear error occurred. But given that no direct evidence disputed Thomas' testimony about the lack of hot water, applying the constitutional harmless error standard, we cannot say beyond a reasonable doubt that the verdict was not affected. The jurors could have based the verdict on a lower level of culpability than one requiring they find that Thomas knew it was reasonably likely great bodily injury or disfigurement would occur.

The prosecutor's erroneous statement increases this uncertainty because it encouraged the jury to convict if it concluded Thomas' actions, even if merely negligent,

were not "okay." This statement invited consideration of emotion rather than a reasoned and dispassionate consideration of the facts and the law as applied to those facts—in particular, as to whether Thomas had knowingly caused the harm.

We find *State v. Santos-Vega*, 299 Kan. 11, 321 P.3d 1 (2014), analogous. Like this case, *Santos-Vega* involved a jury instruction error (in that case, instructions that did not ensure a unanimous jury) and comments during a trial (in that case, comments that implicated the defendant's constitutional rights to remain silent). Applying the *Chapman* constitutional harmlessness test, we held the aggregate impact of the errors denied the defendant a fair trial, and the State failed to prove beyond a reasonable doubt that the errors did not affect the verdict. 299 Kan. at 28. See also *State v. Cosby*, 285 Kan. 230, 246-47, 248, 251-52, 169 P.3d 1128 (2007) (prosecutor's improper reference to defendant's post-*Miranda* silence coupled with prosecutor's incorrect definition of premeditation during closing arguments was cumulative error; reversed and remanded).

We reach the same conclusion here regarding the aggravated battery conviction. The erroneous jury instruction allowed the jury to find guilt for aggravated battery based on a less culpable intent than required by the statute. And the State's repeated comments urged the jury to convict based on emotional considerations, rather than a reasoned and deliberate consideration of the facts and the law applied to those facts. The State has done little to convince us beyond a reasonable doubt that there is no reasonable probability that the errors affected the verdict.

For these reasons, the conviction for count 1, aggravated battery, is reversed and the case is remanded for a new trial on this count.

Finally, Thomas argues the district court improperly scored a prior out-of-state conviction as a person crime when calculating his criminal history score. Thomas argues the district court should not have scored a 2001 Virginia conviction for assault and battery against a family or household member, Va. Code Ann. § 18.2-57.2 (1999), as a person crime. Consequently, his criminal history score was greater than it should have been. This issue regarding the proper classification of prior convictions for criminal history score calculations is a matter of statutory interpretation and is a question of law subject to unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018).

Thomas bases his argument on the decision in *Wetrich*. There, we considered the meaning of the word "comparable" as used in K.S.A. 2017 Supp. 21-6811(e), which directs courts to classify out-of-state convictions as person or nonperson crimes based on the comparable Kansas law in effect when the defendant committed the current crime. 307 Kan. at 559. We held that the legislative intent behind the Kansas Sentencing Guidelines Act is to ensure "even-handed, predictable, and consistent application of the law." This legislative intent is furthered by requiring that the elements of the out-of-state crime be identical or narrower than the applicable Kansas crime, because this requirement prevents the problem of sentencing courts using "an imprecise, ad hoc comparison of out-of-state crimes to Kansas offenses." 307 Kan. at 561-62.

This court announced its decision in *Wetrich* after the district court sentenced Thomas but while Thomas' direct appeal was pending. At the time of his sentencing, caselaw defined "comparable offense" as the "closest approximation." *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003); see *State v. Sartin*, 310 Kan. 367,

370-71, 446 P.3d 1068 (2019). Even if we assume the district court correctly applied this definition, Thomas may still obtain the benefit of the change in the law that occurred while his direct appeal was pending. *State v. Ewing*, 310 Kan. 348, 352, 446 P.3d 463 (2019); *State v. Obregon*, 309 Kan. 1267, 1270-71, 444 P.3d 331 (2019); *State v. Murdock*, 309 Kan. 585, 591-92, 439 P.3d 307 (2019) (*Murdock II*).

Thus, under *Wetrich*, the elements of the Virginia domestic assault and battery conviction must be identical or narrower than the applicable Kansas battery statutes in effect at the time of the current crime in 2015. Virginia statutes do not define assault and battery, instead relying on common-law definitions of that crime. See Va. Code Ann. § 18.2-57.2 (1999) (assault and battery against a family member); Va. Code Ann. § 18.2-57 (2000) (assault and battery). Virginia defines assault and battery as follows:

"An assault and battery is the unlawful touching of another. See *Gnadt v. Commonwealth*, 27 Va. App. 148, 151, 497 S.E.2d 887, 888 (1998). Assault and battery is 'the least touching of another, willfully or in anger.' Roger D. Groot, Criminal Offenses and Defenses in Virginia 29 (4th ed. 1998). The defendant does not have to intend to do harm; a battery may also be 'done in a spirit of rudeness or insult.' Id. (footnote omitted). The touching need not result in injury. See *Gnadt*, 27 Va. App. at 151, 497 S.E.2d at 888. A touching is not unlawful if the person consents or if the touching is justified or excused." *Perkins v. Commonwealth*, 31 Va. App. 326, 330, 523 S.E.2d 512 (2000).

The Kansas battery statute in effect in 2015 defined battery as:

"(a) Battery is:
(1) Knowingly or recklessly causing bodily harm to another person; or
(2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 2015 Supp. 21-5413.

Battery is a person crime. K.S.A. 2015 Supp. 21-5413(g).

Thomas' counsel persuasively argued the Virginia definition might criminalize any touching of another person, while in Kansas the touching must be done knowingly. Counsel argued the Virginia conviction is thus based on a broader definition than used in Kansas. The State conceded this point based on *Wetrich*'s identical-or-narrower definition of "comparable."

We hold that assault and battery, as defined by Virginia common law, is broader than Kansas battery and could encompass behavior that is not a crime in Kansas. Thus, the district court incorrectly calculated Thomas' criminal history score and should have scored his 2001 Virginia conviction as a nonperson crime when calculating Thomas' criminal history. We remand for resentencing based on the appropriate criminal history score.

CONCLUSION

The conviction for aggravated battery is reversed, and the case is remanded for a new trial on that charge. The sentence is vacated and the case is remanded for resentencing in accordance with this decision.

Judgment of the Court of Appeals affirming the district court is affirmed in part, reversed in part, and vacated in part. Judgment of the district court is affirmed in part, reversed in part, and vacated in part, and the case is remanded with directions.

18

HENRY W. GREEN, JR., J., assigned.[1]

STEVE LEBEN, J., assigned.[2]

_____

[1]**REPORTER'S NOTE:**  Judge Green, of the Kansas Court of Appeals, was appointed to hear case No. 115,990 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.

[2]**REPORTER'S NOTE:**  Judge Leben, of the Kansas Court of Appeals, was appointed to hear case No. 115,990 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.