NOT DESIGNATED FOR PUBLICATION

No. 128,110

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RAYMOND LEROY BRADFORD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER MAGANA, judge. Submitted without oral argument. Opinion filed January 30, 2026. Reversed and remanded with directions.

*Lindsay Kornegay*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., SCHROEDER and HURST, JJ.

PER CURIAM: Raymond Leroy Bradford was convicted by a jury of two counts of aggravated offender registration violations of the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. Bradford now appeals, claiming there was insufficient evidence to support the convictions and the district court erred by failing to instruct the jury on the definitions of "reside" and "residence" as provided in K.S.A. 22-4902(j) and (k). We agree with respect to the erroneous jury instruction, and we must reverse on that error, but disagree with Bradford's insufficiency of the evidence argument. Because a reasonable jury that had been properly instructed could have found Bradford guilty

beyond a reasonable doubt when viewed in the light most favorable to the State, we reverse the two KORA convictions and remand for a new trial.

FACTUAL AND PROCEDURAL BACKGROUND

On August 22, 2022, Lesli Apsley walked into the Sedgwick County Sheriff's Office and made a written statement. To avoid confusion between Lesli, her husband, Perry, and their daughter, Kye, we will use first names for the Apsleys. Lesli's statement advised that Bradford asked permission "[a]bout a year or so ago" to use her address on Southgate Street for his offender registration. It is undisputed that Bradford was an offender who was required to register under KORA.

Bradford was Kye's boyfriend, and Bradford and Kye had planned to buy Lesli and Perry's home. Lesli's statement indicated that she told Bradford that, if he did not buy the home, he had to change his offender registration address. In November 2021, Bradford decided he was unwilling or unable to purchase the house, and Lesli asked him to change his offender registration. She asserted that Bradford had never spent a night at her address and that he was living with Kye at her apartment.

Based on Lesli's statement, the State charged Bradford with two counts of aggravated offender registration violations for failure to provide accurate registration information. The case proceeded to a jury trial.

At trial, Detective Michael Clopton testified he worked for the Sedgwick County Sheriff's Offender Registration Unit. Clopton explained that offenders were required to register four times a year. After Lesli reported that Bradford was not living at the Southgate Street address, Clopton met with Lesli and Perry. Lesli told Clopton that Bradford had some personal property at the Southgate Street address, but it had never been moved and Bradford had never stayed the night there.

2

Clopton told the jury that he had attempted to verify Bradford's address in 2021 and was informed that Bradford had moved out of that residence a week earlier. Bradford eventually called him back and informed Clopton that he would be moving into the Apsleys' house. On August 2, 2021, Bradford updated his registration information form and identified the Apsleys' Southgate Street address as his residence.

Clopton also testified that he had spoken with a neighbor who "stated that they had never even seen [Bradford] coming and going from the address, and that person had lived there for 18 years, and they were in very close proximity to that residence on Southgate." Clopton acknowledged that, other than talking to the Apsleys, he did not do any investigation at the Southgate Street address to confirm whether Bradford lived there.

Lesli testified that Bradford had never lived with her and never even stayed the night. She acknowledged that Bradford had left a "duffel bag" at the house after receiving permission to use her address to register. But Lesli insisted that, while Bradford's personal items stayed in a duffel bag in a bedroom, Bradford never stayed at the residence.

Lesli noted that, in addition to Perry and her, Averill Yarbrough and Kaleah Davis—Kye's son and his girlfriend—also lived at the residence. Initially, Bradford and Kye expressed interest in purchasing the Southgate house. Bradford asked permission to use the house for offender registration until the sale. Lesli agreed. Ultimately, however, Bradford decided he was not willing to purchase the Southgate house, and Lesli advised him he needed to change his address for offender registration. Lesli testified she told Bradford to change his registration repeatedly for "pretty close to nine months."

Lesli told the jury that Bradford was actually staying with Kye at her apartment while he was registered at the Southgate Street address. Lesli explained there was no

chance Bradford had been staying at the residence without her knowledge. Although Bradford had a room, Lesli testified that he had never spent the night in the room.

After Lesli's testimony, the parties told the jury that Bradford had stipulated to being convicted of an offense requiring registration and that conviction occurred in Sedgwick County.

Lena Kastner, a clerical staff member of the Sedgwick County Sheriff's Office's Offender Registration Unit, testified that, between June 2, 2021, and June 1, 2022, Bradford only ever reported one address—the Southgate Street address—on his offender registration forms. She also testified Bradford had previously updated his residential address nearly a dozen times prior to using the Southgate address. Thereafter, the State rested.

Bradford called Yarbrough in his defense. Yarbrough testified he lived with Bradford at the Southgate Street address but did not know how long Bradford had lived at that address. On cross-examination, Yarbrough acknowledged he only saw Bradford at family events despite living there. And he never saw Bradford's toothbrush in the shared bathroom.

Davis testified similarly. She stated that she lived with Bradford in 2021 and 2022 at the Southgate Street address. She told the jury she would occasionally see the light on in Bradford's room when she got ready for work at 4:30 in the morning. But she also acknowledged that she rarely interacted with Bradford and often saw Bradford at Kye's apartment.

Bradford testified he lived at the residence on Southgate Street, beginning in August 2021 based on an oral agreement. He worked from 1:30 p.m. until 1:30 a.m. or sometimes later. After Bradford got off work, Kye would drop him off at the Apsleys'

4

home because he was required to be there by 3 a.m. Bradford said that shortly before Lesli made the report, Lesli asked him for money to go to Disney Land. He refused.

After Bradford rested, the State recalled Clopton for rebuttal. Clopton told the jury the definition of "reside" was found in K.S.A. 22-4902 and read the legal definition to the jury. Similarly, he read the KORA definition of "residence" to the jury.

The State called Perry, who testified Bradford did not reside at the Southgate Street address but did receive mail there. Then the State recalled Lesli. She testified she did not choose to report Bradford because he refused to pay her money to go to Disney Land.

During the jury instruction conference, neither party requested an instruction defining the terms "reside" or "residence." The district court's jury instructions did not define either "reside" or "residence."

The jury convicted Bradford of both counts of aggravated failure to register. The district court granted a durational departure and sentenced Bradford to a total sentence of 72 months' incarceration.

Bradford appealed.

ANALYSIS

I.   *The District Court Erred by Failing to Provide an Instruction on the Definitions of "Residence" and "Reside"*

*Standard of review*

> "When analyzing jury instructions, appellate courts follow a three-step process: (1) determine whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below; and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless." *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

"At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record." 320 Kan. at 242. "In determining whether an instruction was factually appropriate, [courts] must determine whether there was sufficient evidence, viewed in the light most favorable to [the defendant or] the requesting party, that would have supported the instruction." *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024).

"Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step." *State v. Peters*, 319 Kan. 492, 515, 555 P.3d 1134 (2024). When a party fails to object to a jury instruction before the district court, an appellate court reviews the instruction to determine whether it was clearly erroneous. K.S.A. 22-3414(3). If the challenging party preserved the issue below, an appellate court applies one of two harmless error tests, depending on whether the instructional error impacts a constitutional right. *State v. Holley*, 313 Kan. 249, 256-57, 485 P.3d 614 (2021).

*Discussion*

Bradford argues the district court erred when it failed to provide a jury instruction on the definitions of "residence" and "reside," which were presented in testimony. In *State v. Ballard*, 320 Kan. 269, 566 P.3d 1092 (2025), our Supreme Court recently addressed a similar argument.

In *Ballard*, the district court had failed to provide jury instructions on the definitions of "residence" and "reside" and "transient." The *Ballard* court concluded "that KORA's definitions differ from common definitions of the words and that the witnesses reinforced those common meanings rather than accurately explaining KORA's definitions." 320 Kan. at 279. Based on this conclusion, the *Ballard* court held that "the differences between KORA definitions and the common understanding of the words weigh toward determining the lack of a jury instruction defining terms was clear error." 320 Kan. at 283. The *Ballard* court further held that it was reversible error for the district court not to instruct on the definitions of "transient," "residence," and "reside." 320 Kan. at 285.

The State concedes that the district court committed clear error here. The State requests that we remand for a new trial consistent with *Ballard*, 320 Kan. at 286.

In light of *Ballard*'s ruling, we hold there is clear error for not instructing the jury on the terms "residence" and "reside."

7

II.      *The State Presented Sufficient Evidence Warranting Remand*

*Standard of review*

When reviewing a sufficiency of evidence argument, we "determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *Mendez*, 319 Kan. at 723.

*Discussion*

In *Ballard*, after finding clear error because the district court failed to instruct on the definitions of "transient," "residence," and "reside," our Supreme Court noted that it "must still consider [Ballard's] sufficiency argument because no retrial would be possible if the evidence were insufficient to convict." 320 Kan. at 285. But it continued:

> "Thus, while we are firmly convinced a jury hearing the same evidence as presented at the first trial and properly instructed *would* have reached a different conclusion if properly instructed, we recognize the possibility a reasonable jury viewing the evidence in the light most favorable to the State *could* [emphasis added] find Ballard guilty." 320 Kan. at 285.

Here, having found clear error regarding the jury instructions, we are in the same posture as the *Ballard* court. We will therefore address Bradford's sufficiency of evidence argument with *Ballard*'s remedy in mind.

Under K.S.A. 22-4902(j), "'[r]eside'" is defined as "to stay, sleep or maintain with regularity or temporarily one's person and property in a particular place other than a location where the offender is incarcerated." An offender is presumed to reside at any location "where the offender stays, sleeps or maintains the offender's person" for at least

8

3 consecutive days or at least 10 nonconsecutive days in a 30-day period. K.S.A. 22-4902(j).

Between June 2, 2021, and June 1, 2022, Bradford only reported one address on his offender registration forms: the Apsleys' residence located on Southgate Street. Bradford had previously updated his address almost a dozen times.

Lesli testified that Bradford stayed with his girlfriend at her apartment and had never lived at the Apsleys' residence. While some of Bradford's personal belongings stayed in a bedroom, to Lesli's knowledge, Bradford never slept at the Southgate Street address or stayed overnight. At one point, Lesli vacuumed the bedroom with Bradford's belongings and straightened the bedding because it was collecting dust. Lesli was confident there was no chance Bradford was staying in her home without her knowledge.

Yarbrough testified he lived with Bradford at the Southgate Street address. But Yarbrough also testified he never saw Bradford sleep there. Yarbrough only ever saw Bradford at "family events" like "Easter dinner and Thanksgivings and things like that." He did not believe Bradford had a toothbrush in their shared bathroom.

Similarly, Davis testified she lived with Bradford at the Southgate Street address in 2021 and 2022. Although Davis also admitted she very rarely interacted with Bradford. Davis acknowledged she saw Bradford at both the Southgate Street address and at Kye's apartment.

Overall, when viewed in the light most favorable to the State, the State presented ample evidence from which a reasonable fact-finder could find Bradford did not reside at the Apsleys' residence. We find that a properly instructed and reasonable jury *could* have found Bradford guilty of aggravated offender registration violations. Therefore, we reverse Bradford's convictions and remand for a new trial. See *Ballard*, 320 Kan. at 286.

9

*Bradford's Remaining Arguments Are Moot*

Bradford also argues that the State, in closing arguments, erred by misstating the legal definition of reside. Last, Bradford contends that cumulative error deprived him of a right to a fair trial. Because the State concedes this case must be remanded for a new trial, Bradford's remaining claims are moot. See *State v. Thomas,* 311 Kan. 905, 468 P.3d 323 (2020); *State v. Hartman*, 66 Kan. App. 2d 94, 95-96, 577 P.3d 598 (2025), *petition for rev. filed* October 3, 2025.

Reversed and remanded with directions.