(196 P.3d 943)
No. 99,135

STATE OF KANSAS, *Appellee,* v. JOSE L. GARCIA, *Appellant.*

Opinion filed November 26, 2008.

*Reid T. Nelson,* capital and conflicts appellate defender, of Capital and Conflicts Appeals Office, for appellant.

*Don L. Scott,* county attorney, and *Stephen N. Six,* attorney general, for appellee.

Before RULON, C.J., HILL and MCANANY, JJ.

HILL, J.: In this appeal, Jose L. Garcia seeks reversal of his driving under the influence of alcohol conviction. He claims errors in a jury instruction and some rulings limiting the defendant's opening statement and then later limiting the defense's cross-examination of a Kansas Highway Patrol trooper. Our review of the record reveals the trial court used PIK Crim. 3d 70.02 in this trial. That instruction tells the jury that if a test shows a blood alcohol

level of .08 or more in the defendant's blood, the jury can assume the defendant was under the influence of alcohol. That is an accurate statement of the law. Also, we find no error in the trial court telling the defense counsel to comment about the evidence and not the weight of it in his opening statement because that is not a time for argument. Finally, the trial court did not abuse its discretion when it granted the State's foundation and relevancy objections to some questions asked the trooper by the defense. We affirm.

*The background reveals slow driving, an arrest, and the use of two testing machines.*

While patrolling in Seward County early one morning in June 2006, Kansas Highway Patrol Trooper James Cody Parr came upon a Ford Explorer driving 16 miles an hour *under* the speed limit. Trooper Parr saw the Explorer weave within its lane and onto the shoulder several times. So, he pulled it over. When the trooper got close to the Explorer, he noticed the driver had bloodshot eyes and his shirt was halfway unbuttoned. Trooper Parr also noticed the driver reeked of alcohol. Garcia, the driver, had difficulties opening his glove compartment and struggled to get out his wallet. Garcia told the trooper he had drunk a "few" beers that night. After Garcia failed the one-leg stand and walk-and-turn field sobriety tests, the trooper arrested him for DUI.

Trooper Parr took Garcia to the Seward County jail. Garcia consented to a breath test. The first test was performed on the Seward County Sheriff's Department's Intoxilyzer machine and showed a blood alcohol content of .000 because no air had entered the machine. The trooper performed the next two tests on the Liberal Police Department's machine. In the second test, performed at 3:27 a.m., the machine read Garcia's blood alcohol content at .093. In the third test, performed 9 minutes later, the machine read Garcia's blood alcohol content at .104.

The State charged Garcia with a felony driving under the influence of alcohol violation of K.S.A. 2005 Supp. 8-1567(a)(3) and failure to keep a single lane. A jury convicted Garcia as charged.

The court sentenced Garcia to the maximum of 1 year in the county jail since this was his third conviction.

*We hold the instruction Garcia complains about is correct.*

Garcia argues the following instruction, given the jury at his trial, misstates the law:

"The law of the State of Kansas provides that a chemical analysis of the Defendant's breath may be taken in order to determine the amount of alcohol in the Defendant's blood at the time the alleged offense occurred. If a test shows there was .08 percent or more by weight of alcohol in the Defendant's blood, *you may assume* the Defendant was under the influence of alcohol to a degree that he was rendered incapable of driving safely. The test result is not conclusive, but it should be considered by you along with all the other evidence in this case." (Emphasis added.)

Garcia objected to this instruction at trial but on different grounds than now raised on appeal. To the trial court he argued the instruction should not be given based on his objection to the admissibility of the Intoxilyzer test results, but he did not contend it was a misstatement of the law. Therefore, we review the challenged instruction to see if it was clearly erroneous. See *State v. Butler*, 257 Kan. 1043, 1065, 897 P.2d 1007 (1995) (applying clearly erroneous standard of review where objections to instruction at trial different from complaint on appeal). " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred.' [Citation omitted.]" *State v. Carter*, 284 Kan. 312, 324, 160 P.3d 457 (2007).

Garcia challenges the instruction's provision that the jury could *assume* he was under the influence based on the breath test results. He claims the presumption "does not appear to be the law in Kansas." He claims that because K.S.A. 8-1005(b) (Furse 1991) says evidence of an alcohol concentration of .10 or more is only "prima facie evidence that the defendant was under the influence of alcohol to a degree that renders a person incapable of driving safely," and so the instruction is invalid. He contends the instructional error was prejudicial because the State noted in its closing argument that

one of Garcia's breath test results was more than .10 and the other result was less than .10.

First, we must point out that in 2006, when Garcia was arrested, the legal limit for adult intoxication while driving was .08, not .10. See K.S.A. 2005 Supp. 8-1567(a)(2). Clearly, with breath tests of .093 and .104 the evidence proved the assumption was applicable in this case.

Next, the instruction comes from PIK Crim. 3d 70.02. The instruction uses the verb "assume," while the statute provides that a test result at or over the stated limit is prima facie evidence. The Comment to PIK Crim. 3d 70.02 explains the different usage:

"The Committee believes that 'prima facie' evidence as used in K.S.A. 8-1005 creates a presumption, and the suggested instruction is worded accordingly. *State v. Haremza*, 213 Kan. 201, 515 P.2d 1217 (1973)."

We note the following:

"Statutory presumptions are rebuttable. A rebuttable statutory presumption only governs the burden of going forward with the evidence, and even when it operates against a defendant in a criminal case, it does not alter the ultimate burden of proof resting upon the prosecution, nor deprive the defendant of the benefit of the presumption of innocence." *State v. Haremza*, 213 Kan. 201, Syl ¶ 2.

Our Supreme Court has pointed out:

"The use of PIK instructions is not mandatory, but is strongly recommended. The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. . . . [A]bsent [a] need [for case-specific modifications], PIK instructions and recommendations should be followed." *State v. Dunn*, 249 Kan. 488, 492-93, 820 P.2d 412 (1991).

Because PIK Crim. 3d 70.02 accurately states the law and the instruction used by the trial court here mirrored the PIK instruction, we find no instructional error.

*The rulings Garcia complains about do not compel a reversal of the conviction.*

Garcia claims the trial court made several erroneous rulings during the course of trial. Garcia complains that when combined, those errors amount to cumulative trial error that denied him a fair

trial. For such an issue, this court must find out whether the circumstances substantially prejudiced Garcia and denied him a fair trial. See *State v. Ackward*, 281 Kan. 2, 29, 128 P.3d 382 (2006). Obviously, to find cumulative error, this court must first find errors that could accumulate.

Garcia's first complaint involves his brief opening statement. After outlining some of the evidence that would be presented, defense counsel stated: "We believe that the evidence is not going to meet the standard to where—." The State objected at that point, arguing counsel could talk about what the evidence would show but could not argue the weight to give the evidence. The trial court sustained the objection, directing defense counsel to "[j]ust comment about the evidence and not the weight of it." Garcia now claims the trial court committed "clear error" by preventing him from arguing the theory of his defense.

The trial court has broad discretion in controlling opening statements, and this court will not interfere with that decision unless the court has abused its discretion. *State v. Duncan*, 25 Kan. App. 2d 41, 42, 956 P.2d 737, *rev. denied* 265 Kan. 887 (1998).

An opening statement is not an argument:

"An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument." *United States v. Dinitz*, 424 U.S. 600, 612, 47 L. Ed. 2d 267, 96 S. Ct. 1075 (1976) (Burger, C.J., concurring).

Defense counsel here was not merely telling the jury what the evidence would show. He was trying to argue what weight the jury should assign the evidence. We find no abuse of discretion in sustaining the State's objection to that argument.

Garcia next claims four rulings made by the trial court during the defense's cross-examination of Trooper Parr were incorrect. The rulings dealt with Garcia's questions about interview techniques, the walk-and-turn test, what happens when other people fail the test, and whether the trooper would ask someone else to take a field sobriety test without other clues. The State objected to all these questions, and the court sustained the objections. We

address each ruling in turn, including additional facts for context where necessary.

- *Interview techniques.* The defense asked Trooper Parr if he was familiar with the alphabet interview technique or the countdown interview technique. Counsel then started to question him about other techniques approved by the National Highway Traffic Safety Administration (NHTSA).

The State objected that other techniques were irrelevant. The trial court ruled that defense counsel could "ask the trooper if he knows of any other or if he's trained in any other tests. And if he tells you he has, you can follow up with why he didn't administer those tests." Rather than following the trial court's lead, defense counsel abandoned that line of questioning.

We believe Garcia misunderstands the trial court's ruling. The court did not limit Garcia to asking only about "other tests" or otherwise rule the tests were irrelevant. Rather, the trial court ruled that before Garcia could ask the trooper about those tests, he had to set up a foundation of Trooper Parr's essential knowledge and training about those tests. See K.S.A. 60-419 ("As a prerequisite for the testimony of a witness on a relevant or material matter, there must be evidence that he or she has personal knowledge thereof, or experience, training or education if such be required.").

Whether a sufficient evidentiary foundation has been laid is a question of fact for the trial court and rests largely within its discretion. When there is substantial competent evidence to support the finding, it will not be disturbed on appeal. *State v. Rohr*, 19 Kan. App. 2d 869, 870, 878 P.2d 221 (1994).

Rather than proving the proper foundation necessary to introduce evidence of any other specific tests through the trooper's testimony, Garcia abandoned that line of questioning. We will not disturb the trial court's foundation ruling.

- *Walk-and-turn test.* The defense counsel asked Trooper Parr about specific NHTSA requirements regarding the walk-and-turn test. The State objected, arguing that defense counsel should be required to produce and specifically reference the NHTSA manual before questioning the trooper about its asserted contents.

When defense counsel expressed confusion on how to continue, the trial court explained, "[Y]ou have to make sure that [the prosecutor] can be satisfied that it's actually in the manual before you ask the question. That's the whole point of having the manual." The trial court found that defense counsel was relying on what "looks like some continuing legal education on standard field sobriety test[s]." The trial court then explained to defense counsel:

"[I]f it's not the actual manual, I'm not going to let you ask specific questions from that book. But, [defense counsel,] I will allow you to ask specific questions to the trooper to inquire as to his knowledge of the testing requirements and of the scoring requirements. But I'm afraid, [defense counsel,] if you don't have the manual, I'm not going to accept you as an expert to correct him of anything he doesn't know the answer."

Garcia argues the trial court limited his counsel from asking questions "unless prior approval from the prosecutor was obtained." That was not the trial court's ruling. Garcia was essentially trying through his questioning of Trooper Parr to prove contents of the NHTSA manual. Our rules of evidence provide that except under certain circumstances not shown here, "[a]s tending to prove the content of a writing, no evidence other than the writing itself is admissible." K.S.A. 60-467(a). The trial court did not err in ruling Garcia could not ask the trooper about specific contents of the NHTSA manual without first producing the manual.

- *Other people's test failures.* Garcia complains the trial court mistakenly granted the State's relevancy objection when defense counsel asked Trooper Parr, "Are there certain instances where somebody cannot complete the test, in your experience?"

Trial courts must deal only with evidence that is relevant. " 'Relevant evidence' means evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). There is no dispute the level of Garcia's impairment was material. The question of whether the evidence of other people's failures to complete the test was relevant or probative of that material fact is reviewed for an abuse of discretion. See *State v. Reid*, 286 Kan. 494, 505-09, 186 P.3d 713 (2008).

The fact that other people are unable to complete the test, whether because of their own intoxication or some physical ail-

ment, does not have any tendency in reason to prove or disprove Garcia's impairment. The trial court did not abuse its discretion in concluding this evidence was irrelevant.

- *Asking others to take the field sobriety tests.* Garcia further complains about the trial court improperly sustaining the State's relevancy objection when his counsel asked Trooper Parr, "But you wouldn't normally, in say a speeding case, have somebody get out and take [a field sobriety test] without other clues present or other indicators present for alcohol?"

Like the prior issue, we must determine if the trial court abused its discretion in concluding this evidence of Parr's actions in other traffic stops was irrelevant. See *Reid,* 286 Kan. at 505-09. Whether the trooper asked another person to submit to a field sobriety test where he or she was stopped for speeding is not probative of, or relevant to prove or disprove, Trooper Parr's grounds for asking Garcia to perform a field sobriety test. Thus, the trial court did not abuse its discretion in sustaining the State's relevancy objection.

With no errors to accumulate, we do not reverse for cumulative error.

Affirmed.